**COALITION TO PRESERVE the INTEGRITY OF AMERICAN TRADEMARKS, et al., Plaintiffs,**

v.

**The UNITED STATES of America, et al., Defendants,**

**and**

**47th Street Photo K-Mart Corporation, Intervenor-Defendants.**

**Civ. A. No. 84–0390.**

United States District Court, District of Columbia.

Dec. 5, 1984.

William Allen, Covington & Burling, Washington, D.C., for plaintiffs.

David M. Cohen, Velta A. Melnbrencis, U.S. Dept. of Justice, Washington, D.C., for U.S.

Robert W. Steele, Washington, D.C., for K-Mart Corp.

Nathan Lewin, Jamie S. Gorelick, Washington, D.C., for 47th Street Photo.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Plaintiffs bring this action for declaratory and injunctive relief, in part in the nature of mandamus, alleging that certain regulations of the Customs Service, an agency of the Department of the Treasury, are inconsistent with the Tariff Act of 1930 and the Lanham Trademark Act of 1946. Asserting that these regulations deny them their entitlement to the full protection of their trademarks as mandated by these statutes, plaintiffs seek a declaration that the regulations are inconsistent ·with the statutes, an injunction prohibiting enforcement of these regulations, and an order directing that the statutes be enforced in accordance with their express terms.

## BACKGROUND

Plaintiffs, American companies suing individually or by representation through their membership in the Coalition to Preserve the Integrity of American Trademarks (COPIAT), are manufacturers or distributors of such trademarked products as fragrances and cosmetics, watches, tires, fine crystal, cameras, photographic equipment, binoculars, and electronic goods. As owners of trademarks registered with the United States Patent and Trademark Office, plaintiffs have also filed copies of the certificates of registration with the Customs Service pursuant to section 42 of the Lanham Act. They claim to suffer damage from the importation and sale in this country of products known as diverted, gray-market, or parallel goods manufactured by their foreign subsidiaries or licensees and bearing their trademarks but imported without authorization. Seeking a mandatory order directing the Customs Service ·to exclude such goods from entry into this country, plaintiffs contend that the Tariff Act of 1930 and the Lanham Trademark Act of 1946 give them an unqualified right to demand such exclusion. Although plaintiffs license certain foreign subsidiaries to manufacture goods bearing their trademarks, they assert that unrelated third parties import these products without their consent.

Defendants are the United States of America, Donald T. Regan, Secretary of the Treasury, and William Von Raab, Commissioner of the United States Customs Service. Intervenor-defendant 47th Street Photo is a retailer of camera, video, and other electronic equipment in New York City. Intervenor-defendant K-Mart Corporation (K-Mart) is a mass merchandiser and retailer operating more than 2,000 discount department stores. Both 47th Street Photo and K-Mart are engaged in the sale of diverted goods to consumers in this coun-

try. Progress Trading Company, Inc., and The American Free Trade Association, which import and distribute diverted goods, as well as four American consumers, were granted leave to file briefs as amici curiae and support the position of K-Mart.

This matter is presently before the Court on the motion of intervenor-defendant 47th Photo to dismiss, plaintiffs' motion for summary judgment, the cross motion of federal defendants for summary judgment, and the cross motion of intervenor-defendant K-Mart for summary judgment. For the reasons set forth below, the motion of 47th Street Photo to dismiss will be granted in part and denied in part; the motion of plaintiffs for summary judgment will be denied; and, the cross motions of federal defendants and K-Mart for summary judgment will be granted.

## MOTION TO DISMISS

■ The Court first turns its attention to the threshold issue of jurisdiction and considers the motion of intervenor-defendant 47th Street Photo to dismiss for lack of subject matter jurisdiction. 47th Street Photo contends that the Court of International Trade has exclusive jurisdiction over plaintiffs' claims under section 526 of the Tariff Act and that plaintiffs' averments with respect to section 42 of the Lanham Act fail to state a claim upon which relief may be granted. In support of the motion to dismiss under the Tariff Act, 47th Street Photo relies on a virtually identical action recently decided in the United States Court of International Trade wherein that court rendered a decision on the very jurisdictional issue presented by this case. In *Vivitar Corp. v. United States, et al.*, 585 F.Supp. 1415 (CIT 1984), the Court of International Trade held that it possesses exclusive jurisdiction over claims arising under section 526 of the Tariff Act. The court premised its jurisdiction on its exclusive jurisdiction under 28 U.S.C. § 1581(a) over international trade disputes and rejected the argument that jurisdiction properly lies in the District Courts because the action is based primarily on United States trademark laws. In

addition, 47th Street Photo argues that for prudential reasons the Court of International Trade should exercise jurisdiction over this complex issue in order to avoid duplication of judicial and legal resources and possible conflicting decisions. In opposition to the motion to dismiss the claim under the Tariff Act, plaintiffs contend that this court has jurisdiction over all aspects of the case.

The Court rejects intervenor-defendant's contentions and finds that jurisdiction is present in this case by virtue of the general federal question jurisdiction under 28 U.S.C. § 1331, the specific jurisdiction under 28 U.S.C. § 1338(a) of actions arising under statutes relating to trademarks, and the specific jurisdiction under 15 U.S.C. § 1121 of all actions arising under the Lanham Trademark Act. This case, contrary to the argument of 47th Street Photo, is not within the purview of any of the specific provisions of 28 U.S.C. § 1581 which would vest the United States Court of International Trade with exclusive jurisdiction. Therefore, the motion of 47th Street Photo to dismiss for lack of subject matter jurisdiction must be denied.

47th Street Photo also contends that the amended complaint fails to state a claim under section 42 of the Lanham Act, 15 U.S.C. § 1124, in that the goods in question bear a genuine trademark rather than one that copies or simulates a registered trademark. Section 42 of the Lanham Act provides that "no article of imported merchandise ... which shall copy or simulate a trademark registered in accordance with the provisions of this chapter ... shall be admitted to entry at any customhouse of the United States ...." Plaintiffs argue that despite the statute's plain language, the Supreme Court's decisions in *A. Bourjois & Co. v. Katzel*, 275 F. 539 (2d Cir. 1921), *reversed* 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923), and *A. Bourjois & Co. v. Aldridge*, 292 F. 1013 (2d Cir.1922), 263 U.S. 675, 44 S.Ct. 4, 68 L.Ed. 501 (1923), construed section 27 as barring the parallel importation of genuine trademarked goods. However, the Court finds that *Katzel* and

*Aldridge* are distinguishable from the instant case. In *Katzel,* the Supreme Court held that an American purchaser of domestic trademark rights was totally independent from the foreign manufacturer and became the complete master of the trademark in the United States for the reason that the public recognized the American purchaser as the sole source of goods in the United States. It was further held that the foreign manufacturer, who had sold its business and trademark in this country, could not subsequently import its products to this country using the old trademark in competition with the American purchaser of the trademark. The *Katzel* holding was premised largely on the equities of the case and was intended to overcome the unfairness of permitting the foreign manufacturer, having sold its trademark rights to another, to thereafter arrange to have its goods marketed in the United States by someone other than the independent American purchaser.

Shortly thereafter, in *Aldridge,* with facts identical to those in *Katzel,* the Supreme Court ruled *per curiam* that the same plaintiff as in *Katzel* could prevent the importation by a third party of face powders made in France by the same company from which the plaintiff obtained its powder. Thus, the *Aldridge* decision, which was tied completely to the facts and analysis of *Katzel,* held only that infringing goods within the equitable reasoning of *Katzel* could be excluded. Under *Katzel* and *Aldridge,* a trademark on imported merchandise would be deemed to "copy or simulate" if the United States registrant who had purchased the rights was truly independent of the foreign entity applying the mark abroad and had developed its own goodwill in the American marketplace.

■ The Court finds, based on the foregoing, that absent the *Katzel* situation, section 42 of the Lanham Act clearly applies only to merchandise bearing counterfeit or spurious trademarks that "copy or simulate" genuine trademarks. Therefore, plaintiffs' amended complaint fails to state a claim upon which relief may be granted

under section 42. Accordingly, the claim under the Lanham Act must be dismissed.

## MOTIONS FOR SUMMARY JUDGMENT

Having determined that there is subject matter jurisdiction over plaintiffs' claims under the Tariff Act, the Court will now address the cross motions for summary judgment. Summary judgment is an extraordinary remedy and should be granted only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits conclusively demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court finds that there are no genuine issues of material fact in dispute and this case is appropriate for summary disposition.

The primary issue for determination is whether the challenged Customs Service regulations are inconsistent with the Tariff Act and should be set aside. Section 526(a) of the Tariff Act of 1930, 19 U.S.C. § 1526, provides that in the absence of the written consent of a trademark owner, it is unlawful to import into the United States "merchandise of foreign manufacture" that bears a trademark "owned by a citizen of, or by a corporation or association created or organized within the United States" properly registered in the Patent and Trademark Office and a copy of the certificate of registration filed with the Secretary of the Treasury in the manner provided by section 42 of the Lanham Act. Merchandise imported in violation of section 526 is subject to seizure and forfeiture.

The challenged regulations, adopted in 1972 and codified in 19 C.F.R. § 133.-21(c)(1)–(3), were promulgated to implement 19 U.S.C. § 1526. Fed.Reg. 20677, *et seq.* The Customs Service regulations provide that restrictions relating to trademarked imports do not apply to imported articles when:

(1) both the foreign and the U.S. trademark are owned by the same person or business entity;

(2) the foreign and domestic trademark owners are parent and subsidiary companies or are otherwise subject to common ownership or control; and

(3) the articles of foreign manufacture bear a recorded trademark applied under authorization of the U.S. owner.

### I.

The provisions of 19 U.S.C. § 1526 were first enacted into law as part of section 526 of the Tariff Act of 1922 and were re-enacted without change as part of the Tariff Act of 1930. In 1936, the Customs Regulations of 1931 promulgated pursuant to the Act, were amended to read as follows:

Art. 518. Prohibition of importation— (a) Merchandise of foreign or domestic manufacture is prohibited importation when it bears a name or mark which copies or simulates a trade-mark or trade name entitled to the protection of the Trade-mark Act of 1905 or the Trade-mark Act of 1920, unless such merchandise is imported by or for the account of, or with the written consent of, the owner of the protected trade-mark or trade name.

(b) A name or mark (including a name or mark which is a genuine trade-mark or trade name in a foreign country) on an article of foreign manufacture identical with a trade-mark or trade name protected by the trade-mark laws of the United States, as well as a name or mark on an article of foreign or domestic manufacture counterfeiting such protected trade-mark or trade name, or so resembling such protected trade-mark or trade name as to be likely to cause confusion or mistake in the minds of the public or to deceive purchasers, shall be deemed for the purpose of these regulations to copy or simulate such protected trade-mark or trade name. *However, merchandise manufactured or sold in a foreign country under a trade-mark or trade name, which trade-mark is registered under the trade-mark laws of the United States, shall not be deemed for the* *purpose of these regulations to copy or simulate such United States trade-mark or trade name if such foreign trade-mark or trade name and such United States trade-mark or trade name are owned by the same person, partnership, association, or corporation.* (Emphasis supplied.)

*See* T.D. 48539, 70 Treas.Dec. 337.

This provision that a trademark on foreign-manufactured merchandise would not be deemed to copy or simulate a United States trademark if the foreign and domestic trademarks were owned by the same person, partnership, association, or corporation remained in effect from 1936 until 1972 when the regulations were amended.

The currently challenged regulations, embodied in 19 C.F.R. § 133.21(c)(1)–(3), resulted from a rulemaking proposed on December 19, 1970. Although all appropriate steps for agency rulemaking were followed, including the solicitation of public comment, plaintiffs herein did not participate in the proceeding. On October 3, 1972, the Customs Service published a Final Notice (37 Fed.Reg. 20677) adopting these regulations implementing section 526. The revisions were intended to clarify the regulations and to incorporate Customs Service policies and procedures not included in previous regulations.

The 1972 revisions were in response to the decision in the consolidated "perfume" cases, *United States v. Guerlain,* 155 F.Supp. 77 (S.D.N.Y.1957), *vacated and remanded,* 358 U.S. 915, 79 S.Ct. 285, 3 L.Ed.2d 236 (1958), *action dismissed,* 172 F.Supp. 107 (S.D.N.Y.1959). The theory of the case rested on an antitrust doctrine. The trial court gave judgment for the Government and held that section 526 did not protect a United States company that was part of an international enterprise against importation of the enterprise's goods. On appeal to the United States Supreme Court, the Government asked that the judgment be vacated and the case remanded to the District Court so that the Government could move to dismiss its own case in order that legislation restricting

section 526 could be promptly submitted. That was the genesis of a 1959 bill which was introduced to repeal section 526. The Congress did not enact that bill. Thereafter, the challenged regulations were promulgated permitting the unrestricted importation of trademarked products manufactured abroad where both the foreign and American trademark rights are owned by the same company or companies under common ownership.

Since 1951, the Customs Service has issued several letters describing its policy on foreign-manufactured goods bearing trademarks owned by Americans under section 526. The policy of the Customs Service has been consistent that if the United States trademark owner and the owner of the foreign rights to the same mark are one and the same person, articles produced and sold abroad by the foreign owner may be imported by anyone since the trademark owner has itself either introduced or authorized the introduction of the articles into commerce and thereafter may not unreasonably restrict the use of the product. *See* Customs Service Letters dated March 27, 1951, July 2, 1962, March 19, 1963, June 27, 1962, and December 11, 1968. If the foreign producer has been authorized by the American owner to produce and sell goods abroad bearing the recorded trademark or trade name, merchandise so produced is deemed admissible by the Customs Service. *See* Customs Service Letter dated November 25, 1968.

## II.

Plaintiffs contend that the challenged regulations effectively nullify the protection for unauthorized trademark imports that Congress intended United States trademark owners to have. Plaintiffs claim that the statute, clear on its face, is controlling and, contrary to the position of defendants, there is no need to look to the legislative history to determine the intent of Congress. Plaintiffs also allege harm in that the regulations, as interpreted by the Customs Service, permit goods manufactured abroad bearing an authentic U.S.

trademark to be imported and sold in the United States by third parties without authorization from the owner of the trademark. These diverted goods, plaintiffs aver, not only are frequently of a different quality, but also are marketed outside the authorized distribution channels responsible for promoting, supporting, and servicing the brand in the United States. Moreover, plaintiffs argue, diverted goods, often sold by discount houses throughout this country, result in revenue loss due to lost sales of products manufactured in this country. Because of the interpretation of these regulations, plaintiffs aver they have suffered a loss of prestige associated with the selection of distributors, diffusion of promotional efforts, impairment of good will, and the threat of an untimely end to the fashionable aura of the brand name.

It is further claimed that the regulations have resulted in agency inaction and in unlawful limitations on the enforcement of the statute. Plaintiffs insist that the continued introduction of diverted goods will destroy the very essence of the trademark and the property values it represents by permitting third parties who do not contribute to the advertising efforts and good will identified with the mark to obtain a "free ride" by reaping unfair benefits to themselves. Plaintiffs seek to block middlemen from buying the diverted merchandise cheaply in Europe, importing it into this country, and then underselling the authorized dealers by as much as thirty percent.

In arguing for summary judgment in their favor, defendants contend that the challenged regulations are a correct application of the trademark statutes and that the legislative history demonstrates that it was not the intention of Congress to prohibit importation of diverted goods. Defendants, consistent with their interpretation of the statute, argue that once a trademark owner has authorized the foreign manufacturer to apply the trademark to goods, the trademark owner himself has introduced the articles into commerce and cannot thereafter unreasonably restrict the use of the product. The position of the

intervenor-defendants is that the statute has been properly interpreted by the Customs Service and, further, the importing of diverted goods provides consumers with a legitimate alternative.

### III.

The issue for decision, then, is whether the regulations promulgated by the Customs Service are invalid because they are inconsistent with the statute. As the Supreme Court reiterated in *Federal Election Commission v. Democratic Senatorial Campaign*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981) (citing *Zenith Radio Corporation v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978), and *Train v. Natural Resources Defense Council*, 421 U.S. 60, 75, 95 S.Ct. 1470, 1479, 43 L.Ed.2d 731 (1975)), (1) the task for a court is not to interpret a statute as it thinks best, but rather the narrower inquiry into whether the agency's construction is "sufficiently reasonable" to be accepted by the reviewing court; and (2) in order to satisfy this standard, it is not necessary for a court to find that the agency's construction is the only reasonable one or even the reading the court would have reached if the question had initially arisen in a judicial proceeding. The pivotal question is whether the construction by the Customs Service, as embodied in the challenged regulations, is sufficiently reasonable. This Court finds that the challenged regulations reflect the Customs Service's long-standing and consistent interpretation of section 526, which interpretation is fully consistent with the intent of Congress in enacting the legislation. This is amply demonstrated by the legislative history of the statute as well as judicial interpretation.

Previous court decisions have construed the statutory language of the Tariff Act to prohibit only the entry of merchandise which copies or simulates registered trademarks and not as a bar to genuine articles. *See Apollinaris Company v. Scherer*, 27 F. 18 (C.C.S.D.N.Y.1886); *Fred Gretsch Mfg. Co. v. Schoening*, 238 F. 780 (2d Cir.

1916). These decisions were followed by *Katzel, supra,* and *Aldridge, supra,* where plaintiffs who held trademark rights conveyed from foreign companies sought to exclude from entry genuine products manufactured in the foreign country and bearing the trademarks. As noted above, the Supreme Court held in *Katzel* that a foreign manufacturer, having sold his business and trademark to a purchaser in this country, could not subsequently come to this country and use his old trademark in competition with that purchaser.

Neither *Aldridge* nor *Katzel* involved the situation in which one and the same party, owning trademark rights in the United States and abroad, authorized the application of the trademark on foreign-made goods and then sought to enjoin importation of those goods which bore the genuine trademark. This latter situation was involved in *United States v. Guerlain, Inc., supra* at pages 849–850, which formed the basis of the Customs Service regulations which plaintiffs now challenge.

In addition to judicial decisions construing the statutory language as not barring genuine articles, a pattern of legislative acquiescence has indicated acceptance by the Congress of the Customs Service's interpretation of section 526 by failing to amend that section when legislation closely related to the provision was enacted. In 1978, in connection with the Customs Procedural Reform and Simplification Act of 1978, Pub.L. 94–410, 92 Stat. 903, the House Ways and Means Committee specifically recognized that section 526 "has been consistently interpreted by the United States Customs Service for the past 20 years as excluding from protection foreign-produced merchandise bearing a genuine trademark created, owned, and registered by a citizen of the United States if the foreign producer has been authorized by the American trademark owner to produce and sell abroad goods bearing the recorded trademark." H.Rep. No. 621, 95th Cong., 1st Sess. 27 (1977). Yet, Congress took no action for the purpose of protecting owners of the United States trademarks from im-

portations bearing their own trademarks in such circumstances.

When an agency's interpretation and application of a particular statute are known to Congress, and Congress either amends the statute without affecting the administrative practice or refuses to act at all, the administrative interpretation of the law is presumed to be correct and consistent with Congressional intent. *Haig v. Agee*, 453 U.S. 280, 297–98, 101 S.Ct. 2766, 2776–77, 69 L.Ed.2d 640 (1981). The construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction. *Red Lion Broadcasting Co. v. Federal Communications Commission*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). In the instant case, Congress is well aware of the Custom Service's policy of permitting importation of diverted goods since at least 1944. It was clearly so informed when it enacted the Lanham Act in 1946 and again when it considered amendments to the Customs laws in 1954. And in 1978, in connection with the Customs Reform and Simplification Act, Congress specifically noted the practice and yet chose not to change it while amending other parts of section 526. Under the circumstances, Congress must be deemed to have approved the interpretation of and practice under section 526. *See Bob Jones University v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Zenith Radio Corporation v. United States*, 437 U.S. 443, 450–9, 98 S.Ct. 2441, 2445–50, 57 L.Ed.2d 337 (1978).

Moreover, the policy of the Customs Service of excluding from protection foreign-produced merchandise bearing a genuine trademark has been long-standing and consistent. When an agency charged with administering a statute has long adhered to a particular interpretation of its terms, that agency interpretation is entitled to "con-siderable weight". *United States v. National Association of Securities Dealers*, 422 U.S. 694, 719, 95 S.Ct. 2427, 2442, 45 L.Ed.2d 486 (1975); *Accord, Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981); *Federal Trade Commission v. Mandel Brothers, Inc.*, 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959). It is clear from the existing regulations, that the Customs Service, as the agency charged with the administration of the laws pertaining to entry of imports, has chosen to protect the owners of registered and recorded trademarks against imports of goods bearing the genuine trademark only in those instances in which the owners have not authorized the application of the trademarks abroad either directly or through other parties under their control. To the contrary, in those instances in which owners have authorized the application of the trademarks abroad, the Customs Service has not accorded protection. The Customs Service interpretation of the statute, as demonstrated through its policies, is long-standing and consistent.

The intervenor-defendant 47th Street Photo presents an additional argument to preclude summary judgment contending that there are genuine issues of material fact in dispute. This argument has been considered but is deemed to be without merit. The Court finds that although there are tangential issues in dispute, they are not genuine issues of material fact touching on the issues to be decided in this case.

The construction of section 526 of the Tariff Act by the Customs Service, as embodied in the challenged regulations, is sufficiently reasonable. This construction is supported by the legislative history, judicial decisions, legislative acquiescence, and the long-standing consistent policy of the Customs Service. The regulations clearly implement the limited purpose for which section 526 was enacted and are consistent with and effectuate the intent of Congress to permit entry of trademarked goods not involving the *Katzel* situation.

For the foregoing reasons and it appearing to the Court that the pleadings, depositions, answers to interrogatories, admissions, and affidavits conclusively demonstrate that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law, the plaintiffs' motion for summary judgment must be denied, and the cross motions of the federal defendants and intervenor-defendant K-Mart must be granted. An Order consistent with this Memorandum Opinion will be entered this date.

## ORDER

Upon consideration of the motion of intervenor-defendant 47th Street Photo to dismiss, plaintiffs' motion for summary judgment, the cross motion of federal defendants for summary judgment, the cross motion of intervenor-defendant K-Mart Corporation for summary judgment, the memoranda submitted in support of and in opposition to the motions, the entire record herein, the argument of counsel, and consistent with the Memorandum Opinion of even date, it is this 5th day of December, 1984,

ORDERED

1. That the motion of the intervenor-defendant 47th Street Photo to dismiss for lack of subject matter jurisdiction be, and hereby is, denied;

2. That the motion of the intervenor-defendant 47th Street Photo to dismiss for failure to state a claim under section 42 of the Lanham Act be, and hereby is, granted;

3. That plaintiffs' claims under section 42 of the Lanham Act be, and they hereby are, dismissed for failure to state a claim upon which relief may be granted;

4. That the motion of the plaintiffs for summary judgment be, and hereby is, denied;

5. That the motion of the federal defendants for summary judgment be, and hereby is, granted;

6. That the motion of the intervenor-defendant K-Mart Corporation for summary judgment be, and hereby is, granted;

7. That judgment be, and hereby is, entered for defendants on the merits of plaintiffs' claim under section 526 of the Tariff Act.