HADDAD MANUFACTURING CO., INC., Plaintiff,

v.

GUCCI, INC., Defendant.

Civ. A. No. 86–4375.

United States District Court, D. New Jersey.

Jan. 21, 1987.

Ezra Sutton, Woodbridge, N.J., for plaintiff.

Clapp & Eisenberg by John J. Barry, Newark, N.J., Patton, Boggs & Blow by George M. Borababy, Washington, D.C., for defendant.

## OPINION

LECHNER, District Judge.

This case involves allegedly counterfeit Gucci luggage. It appears the United States Customs Service ("Customs") has taken steps to prevent the plaintiff, an importer, from selling or otherwise disposing of a quantity of imported luggage which was decorated, when imported, with stripes similar or identical to stripes protected by a registered Gucci trademark. Customs declared the items carried a counterfeit trademark but has apparently indicated the luggage could be released if the plaintiff obtains Gucci's written consent. Gucci, however, has withheld its consent. Plaintiff instituted this declaratory judgment action for an order releasing the luggage. Since it appears Congress has vested the Court of International Trade ("CIT") with exclusive jurisdiction over this issue, the action must be dismissed.

### Facts

Plaintiff, Haddad Manufacturing Co., Inc. ("Haddad"), is a New York corporation with its place of business located in Linden, New Jersey. Defendant, Gucci, Inc. ("Gucci") is apparently a New York corporation with its place of business in Secaucus, New Jersey. Haddad asserts this court has jurisdiction over this matter because the action arises under the federal trademark laws. 28 U.S.C. § 1338(a).

It appears that Gucci is the holder of certain trademarks and trade names, including a green-red-green stripe for which Gucci has obtained United States Trademark Registration No. 1,122,780. The stripe is designed for use in decorating goods including luggage. (Gucci's Brief, Ex. A.) Gucci has apparently filed a copy of this trademark registration with the Secretary of the Treasury pursuant to 19 U.S.C. § 1526(a) and 19 C.F.R. § 133.1. 19 U.S.C. § 1526 prohibits the importation of merchandise bearing a registered trademark absent written consent from the registrant.

It appears that in late 1985 or early 1986, Haddad imported a quantity of luggage bearing stripes identical to those registered under the Gucci trademark. Customs initially cleared the luggage, but, on or about January 28, 1986, issued a "Notice of Redelivery" ordering that the merchandise be returned to Customs because of infringement on the Gucci trademark. (Complaint ¶ 5.) Counsel for Haddad indicated at oral argument that Customs' notification to Haddad stated that the Haddad luggage bore "counterfeit" Gucci marks. It appears the luggage has not been returned to Customs.

The complaint alleges that in March, 1986, a Haddad representative contacted a Gucci representative, advised him the offending stripes had been removed from the luggage, and requested a Gucci representative inspect the luggage for the purpose of issuing a consent on behalf of Gucci to the release of the luggage. The complaint alleges the Gucci representative initially orally agreed to have the luggage inspected, but after several days, informed the Haddad representative Gucci would not consent to a release of the luggage. (Complaint ¶¶ 6, 7.)

On November 6, 1986, Haddad filed its complaint in this action. The complaint sets forth the above facts, claims Gucci wishes to have the subject luggage destroyed and seeks a declaratory judgment ordering the luggage be released. In lieu

of answering the complaint, Gucci filed a motion to dismiss for lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted and for failure to join Customs, an indispensable party. Briefs were submitted and the parties argued the motion on January 12, 1987.

*Discussion*

Congress has enacted extensive and specific legislation governing the importation of merchandise bearing marks that appear to be counterfeit or infringe upon registered trademarks. Specifically, the law provides that when Customs determines imported merchandise bears a "counterfeit" trademark, the merchandise "shall be seized and, in the absence of the written consent of the trademark owner, forfeited for violations of the customs laws...." 19 U.S.C. § 1526(e). A counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. As noted, counsel for Haddad stated at oral argument that Customs' Notice of Redelivery with respect to the luggage at issue indicated the luggage bore counterfeit Gucci stripes.

■ Once Customs has seized merchandise bearing counterfeit marks and the merchandise has been forfeited for violation of the customs laws (19 U.S.C. 1526(e)), the law provides for disposal of the forfeited goods in one of four ways. After obliterating the offending trademark, Customs may dispose of the goods by delivering them to certain governmental bodies or eleemosynary institutions, by selling them at public auction or, if warranted, by destruction of the goods. 19 U.S.C. § 1526(e)(1)—(4). The law does not provide for return of the forfeited goods to the offending importer after removal of the trademarks. Moreover, nothing in the statute suggests, and counsel for Haddad has pointed to no precedent, that a trademark holder may not unreasonably withhold consent for the release of forfeited merchandise. It appears the Customs official who issued the Notice of Redelivery in this case, did so under the authority of 19 U.S.C.

§ 1526(e). Accordingly, it would run directly contrary to an explicit Congressional mandate for this court to issue an order releasing the subject luggage.

The law is equally clear that a determination made by a Customs official, that imported merchandise bears a counterfeit mark and is to be redelivered to Customs, is a final and conclusive decision that may be challenged only along specified channels. As provided for in 19 U.S.C. § 1514(a):

> [D]ecisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to ... a demand for redelivery to customs custody under any provision of the customs law ... shall be final and conclusive upon all persons ... unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade....

However, an importer who wishes to challenge a Customs' "demand for redelivery" is not without remedies. 19 U.S.C. §§ 1514 and 1515 set forth the mechanism for protesting Customs' decisions. Most importantly for purposes of this motion, 28 U.S.C. § 1581(a) provides: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]." Counsel for Haddad stated at oral argument he had filed a protest to Customs' Notice of Redelivery. Counsel also stated the protest contests Customs' determination that the subject luggage carried counterfeit Gucci marks.

■ Given the specificity and unambiguous nature of these statutory provisions, it is evident Congress has crafted an administrative mechanism for addressing and resolving importers' grievances with Customs decisions about counterfeit or trademark-infringing merchandise. Importers are required initially to protest Customs decisions directly to Customs. If resolution of the protest by the appropriate Cus-

toms officials is deemed unsatisfactory, aggrieved importers are entitled to judicial review, *exclusively* in the CIT.[1] Other courts have interpreted the Congressional intent behind enactment of these statutory provisions as assuring administrative review of these types of disputes, with judicial review in the specialized CIT. *See, e.g., United States v. Uniroyal, Inc.,* 687 F.2d 467, 472 (C.C.P.A.1982); *Manufacture de Machines du Haut-Rhin v. Von Raab,* 569 F.Supp. 877, 882 (C.I.T.1983).

Haddad's attempt to circumvent this evident Congressional intent, by seeking a declaratory judgment from this court releasing the subject luggage, is unwarranted. Haddad asks this court to overlook a plain Congressional mandate that an importer's difficulties with Customs decisions be initially reviewed by Customs and, if necessary, judicially reviewed by the CIT. For this court to entertain Haddad's claim, weigh the equities and, in effect, pass judgment on Customs' determination, would impermissibly invade the jurisdiction of the CIT as the forum designated by Congress to resolve these matters.

With respect to the Congressional intent underlying the statutory provisions at issue in this case, the discussion in *Vivitar Corp. v. United States,* 761 F.2d 1552 (Fed.Cir. 1985), is persuasive. Although the case involves issues entirely distinct from those raised in this matter, the court's analysis of the competing statutory provisions conferring jurisdiction on the federal district courts and the CIT is noteworthy:

> The jurisdiction granted to the U.S. Customs Court, predecessor to the Court of International Trade, has long been recognized as an exception to the jurisdiction of the district courts under 28 U.S.C. § 1331, i.e. federal question jurisdiction.... Given the broad jurisdictional grant to district courts, a district court would always have jurisdiction, rather than the CIT, using this approach. The result would negate the intent of Congress in granting *exclusive* jurisdiction over certain matters to the CIT. The focus must be solely on whether the claim falls within the language and intent of the jurisdictional grant to the CIT.

*Id.* at 1559–60 (citation omitted) (emphasis in original text). The court's point is well-taken; to recognize federal district court jurisdiction in the case at bar would, in effect, render meaningless Congress' designation of CIT jurisdiction as "exclusive."

This decision yields certain appealing practical results. First, to ignore the exclusivity of the CIT's jurisdiction over disputes such as these would inevitably result in unnecessary litigation. As in this case, challenges to Customs decisions might proceed both to the CIT and in federal district court. Obviously, such parallel proceedings are wasteful of judicial resources. In addition, dual proceedings may result in disruption of the uniformity envisioned in the statutory scheme enacted by Congress.

Haddad's position on this motion is also unpersuasive for a related practical reason. Haddad requests a hearing by this court and a finding that because the offending marks have been removed from the subject luggage, Gucci will not be harmed by release of the luggage. Acceptance of Haddad's position would permit importers to attempt to import counterfeit or infringing goods, risk seizure of the goods by Customs and, if the goods are seized, simply remove the offending marks and seek judicial release of the goods. Such a scenario would subject innocent trademark registrants, such as Gucci, to the threat of legal entanglement in disputes between Customs and importers, every time a shipment of allegedly infringing or counterfeit goods enters the country. The statutory scheme enacted by Congress avoids this potential litigious morass by requiring aggrieved importers to seek initial administrative review of Customs decisions from Customs and, if necessary, judicial review in the CIT.

---

1. Congress has explicitly vested the CIT with all powers of a federal district court. 28 U.S.C. § 1585.

The precedent relied upon by Haddad in support of its position is unavailing. *Sturges v. Clark D. Pease, Inc.*, 48 F.2d 1035 (2d Cir.1931), involved an individual's attempt to import a single Hispano-Suiza automobile into the country for her personal use. The United States registrant of the Hispano-Suiza trademark refused to consent to a release by Customs of the automobile and the Customs authorities detained the car. The individual brought suit for permission to have the trademarks obliterated and for possession of the car.

In a per curiam opinion, the Second Circuit remanded the matter to Customs with instructions that Customs promptly determine what to do with the automobile. The Second Circuit indicated that if Customs failed to make its determination within thirty days, the matter would proceed to the district court. The district court's jurisdiction was inferred from certain specific statutory provisions in the customs laws at issue in the case. *Sturges*, 48 F.2d at 1039. Thus, unlike the case at bar, federal district court jurisdiction stemmed from the specific customs laws at issue. In addition, unlike the case at bar, the question of whether the imported merchandise was counterfeit or otherwise "infringed" a registered trademark, was simply not at issue. Because the statutory provisions controlling the case at bar explicitly provide for exclusive jurisdiction over this dispute in the CIT, I decline to afford *Sturges* controlling weight in this case.

The decision in *Croton Watch Co., Inc. v. Laughlin*, 208 F.2d 93 (2d Cir.1953), does not support Haddad's position. The action was initiated by an importer whose shipment of Swiss watches was denied entry by Customs because the watches were "confusingly similar" to watches protected by a registered trademark. The importer brought a declaratory judgment action against the trademark owner *and* Customs in federal district court for: (1) a declaration the watches were not confusingly similar and the Customs officials' detention of the shipment was arbitrary and unauthorized; (2) enforcement of an existing contract between the importer and the trade-

mark owner; (3) an order restraining Customs from detaining the watches; and (4) an order that the trademark owner file with Customs a written consent to release of the watches. *Id.* at 95.

Although it is true the Second Circuit determined that jurisdiction properly lay in the federal district court, the significantly different factual and procedural postures of the case render that aspect of the Second Circuit's holding inapposite to the case at bar. Unlike this case, *Croton Watch* turned primarily on interpretation, and enforcement, of a pre-existing agreement governing the parties' rights with respect to the trademark at issue. In addition, there is no indication in the *Croton Watch* opinion that a protest to the Customs' action had been initiated by the importer. The Customs official involved in detention of the watches was a named party to the action, thus any judicial determination in the case would not have conflicted with parallel proceedings in the Customs Court. In light of these distinctions from the case at bar, *Croton Watch* does not mandate federal district court jurisdiction in this case.

*Coalition to Preserve the Integrity of American Trademarks v. United States,* 598 F.Supp. 844 (D.D.C.1984), *rev'd on other grounds,* 790 F.2d 903 (D.C.Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 642, 93 L.Ed.2d 699 (1986), is readily distinguishable. In that case, the district court rejected an argument that it lacked jurisdiction over a challenge to the validity of regulations promulgated by Customs to administer 19 U.S.C. § 1526. The movant had argued the CIT was vested with exclusive jurisdiction, pursuant to 28 U.S.C. § 1581, over the challenge. The court's decision was based on the fact that the challenge to the regulations was "not within the purview of any of the specific provisions of 28 U.S.C. § 1581 which would vest the United States Court of International Trade with exclusive jurisdiction." *Coalition to Preserve,* 598 F.Supp. at 847. Thus, the case is factually distinct from the case at bar in which Haddad's underlying

complaint with Customs is *explicitly* within the purview of 28 U.S.C. § 1581(a).

Haddad has not argued or suggested the channels for review of Customs' Notice of Redelivery, as provided in the customs laws at issue, will be insufficient to provide it the relief it seeks.[2] Perhaps, if the statutory mechanism afforded Haddad insufficient procedural or substantive rights, or if the remedies available from the CIT were demonstrably lacking, cause might lie for recourse to the federal district courts. Absent a showing of such factors, the clearly established review mechanism, of which Haddad has already availed itself, precludes this court from stepping into the fray.

*Conclusion*

Haddad's attempt to circumvent the plain Congressional intent of establishing a statutory review mechanism for importers aggrieved by Customs decisions cannot stand. Since the Court of International Trade has exclusive jurisdiction to entertain Haddad's dispute with Customs, the motion to dismiss is granted.[3]

On January 3, 1986, this Court: (a) held a hearing on plaintiffs' summary judgment action. Any motion for reconsideration of this decision based upon arguments made or authorities cited, either in the papers submitted or at oral argument, is denied.

---

**2.** As discussed in footnote 1, *supra,* the CIT enjoys the very powers wielded by this court.

**3.** I have reviewed a letter from Haddad's counsel, dated January 14, 1987, and his request therein for reconsideration of dismissal of the