Kenneth A. ANDERSON, Jr., dba
Kenneth A. Anderson, Jr. &
Sons, Plaintiff,

v.

The UNITED STATES, et al.,
Defendants.

Court No. 85–4–00582.

United States Court of
International Trade.

May 13, 1985.

Doherty and Melahn, William E. Melahn, Boston, Mass., for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Joseph I. Liebman, New York City, Attorney in Charge, International Trade Field Office, Veronica A. Perry, New York City, for defendants.

## Memorandum Opinion

DiCARLO, Judge:

Plaintiff, a customs broker, seeks a preliminary injunction prohibiting the United States Customs Service (Customs) from issuing liquidated damage claims against Seamark Corporation (Seamark) for failing to export under Customs supervision two entries of frozen shrimp denied admission into the United States.[1]

A temporary restraining order (TRO) was issued following argument on April 23, 1985. With defendant's consent, the TRO was extended to May 13, 1985. An evidentiary hearing was held in Boston, Massachusetts on May 6, 1985. The motion is denied, and the TRO vacated.

## BACKGROUND

Seamark entered frozen shrimp at Boston under a general term bond.[2] After entry the merchandise was held at a cold storage warehouse in Boston, pending inspection by the Food and Drug Administration. The shrimp were found to contain salmonella and filth, and were refused admission in January 1985, and ordered exported or destroyed under Customs' supervision within 90 days pursuant to Section 801 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 381 (1982).

---

**1.** Liquidated damages are assessed "[w]hen there is a failure to meet the conditions of any bond posted with Customs...." 19 C.F.R. § 172.1(a) (1984).

**2.** The terms of the bond required Seamark to perform all acts required by law to enter the merchandise.

Plaintiff, as Seamark's agent, arranged for export of the merchandise from Newark by the Nippon Yussen Kaisha Line (NYK). Plaintiff prepared two transportation and exportation (T & E) entries[3] to accompany the merchandise to Newark. Customs' District Director in Boston approved the T & E entries on January 30, 1985, and provided plaintiff with a franked envelope in which the entry documents were to be returned to the District Director after signature by Customs officials at Newark.

On January 31, 1985, the shrimp were transported from the warehouse to the Moran Terminal in Boston. The entry documents were given to Customs employees at the Moran Terminal.

A trucking firm hired by NYK then picked up the shrimp at Moran Terminal and transported them to Newark where, according to a representative of NYK, they were boarded on a ship bound for Thailand on February 9, 1985. The trucking firm hired by NYK removed the merchandise from Moran Terminal without Customs' authorization and failed to pick up the T & E entries, which remained with the Customs employees at the Terminal. Customs did not inspect the merchandise at Boston or Newark.

On March 2, 1985, plaintiff learned that the T & E entries had not been executed at Newark and were still at Moran Terminal, and that Customs had not certified export of the merchandise. Plaintiff was told that since Seamark did not export the shrimp under Customs supervision within 90 days of the denial of admission Seamark did not fulfill its obligation under the bond and was subject to liquidated damage claims.

Plaintiff produced bills of lading and ship manifests to demonstrate that the merchandise had been exported, but Customs officials in Boston refused to certify export on the T & E entries.

Plaintiff brought this action to enjoin defendants from issuing liquidated damage claims against Seamark for failure to export the merchandise under Customs' supervision.

Plaintiff alleges that he would have to indemnify Seamark and would suffer injury to his reputation should Customs issue a claim for liquidated damages against Seamark. Plaintiff says there has been substantial compliance with applicable regulations and that the refusal of Customs to execute the entries is "agency action unlawfully withheld" within 5 U.S.C. § 706(1) (1982).

Plaintiff asserts jurisdiction under 28 U.S.C. § 1581(i)(1)(2), and (4) (1982).

Defendants have moved to dismiss the action alleging that the plaintiff lacks standing, since any assessment of liquidated damages will lie only against Seamark, and that the Court does not have jurisdiction, since administrative remedies available to Seamark have not been exhausted.[4] Defendants contend that judicial review of this claim is proper only if and when the United States initiates an action against Seamark to recover on the bond under 28 U.S.C. § 1582(2) (1982). Should the Court determine it lacks jurisdiction, plaintiff requests that the action be transferred to the District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1631 (1982).

■ This Court has exclusive jurisdiction of the enforcement by Customs of laws and regulations over imports. *See Vivitar Corp. v. United States,* 761 F.2d 1552, 1560 (Fed.Cir.1985). It is, however, permissible to reserve decision on such threshold claims as lack of jurisdiction for failure to exhaust administrative remedies and standing where relief is denied. *See Secretary of the Navy v. Avrech,* 418 U.S.

---

**3.** T & E entries (Customs Forms 7512 and 7512c) must accompany the merchandise to the port of exportation, where Customs executes the forms to certify that the goods have been exported. *See* 19 C.F.R. §§ 18.3, .7, .20, .25, .26 (1984).

**4.** Should the government assess a liquidated damage claim against Seamark, Seamark may petition for mitigation. *See* 19 C.F.R. §§ 172.1–.33 (1984).

676, 677–678, 94 S.Ct. 3039, 3039–3040, 41 L.Ed.2d 1033 (1974) (per curiam); *Ripon Society v. National Republican Party,* 525 F.2d 567, 577 n. 26, 578 n. 28 (D.C.Cir. 1975), *cert. denied,* 424 U.S. 933, 96 S.Ct. 1147, 1148, 47 L.Ed.2d 341 (1976). The Court follows this course with respect to this motion.[5]

## THE PRELIMINARY INJUNCTION

■ In order to prevail on this motion, plaintiff must show (1) threat of immediate irreparable harm; (2) likelihood of success on the merits; (3) that the public interest would be better served by issuing rather than by denying the injunction; and, (4) the balance of hardships on the parties favors issuing the injunction. *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir.1983); *S.J. Stile Associates Ltd. v. Snyder,* 68 CCPA 27, 30, 646 F.2d 522, 525 (1981); *see Asher v. Laird,* 475 F.2d 360, 362 (D.C.Cir.1973).

■ Plaintiff bears a "heavy burden of producing evidence" on motion for preliminary injunction. *American Air Parcel Forwarding Company, Ltd. v. United States,* 1 CIT 293, 298, 515 F.Supp. 47, 52 (1981).

### Irreparable Harm

■ Plaintiff must show that the "alleged threats of irreparable harm are not remote or speculative but are actual and imminent." *State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 755 (2d Cir.1977).

■ Plaintiff alleges two injuries. Plaintiff testified he has an oral agreement with Seamark that makes him liable for any penalties assessed against Seamark. Plaintiff also complains that his reputation will be damaged if Customs is not enjoined

from making liquidated damage claims against his client.

Both these injuries are speculative. Plaintiff's "agreement" with Seamark appears to simply embody the agency principle that the agent will be liable to the principal for the agent's negligence. *See* Restatement (Second) of Agency, § 401 comment c (1958). Plaintiff insists he was not negligent, and that he did all he could do to ensure that the T & E documents were executed by the appropriate Customs officials. The Court need not, and does not, make any finding as to plaintiff's negligence. If plaintiff was not negligent, as he claims, he would not be liable to Seamark should a liquidated damage claim issue against Seamark. No representative of Seamark, or any other importer, testified as to any intention to terminate its business relationship with plaintiff as a result of the plaintiff's handling of these matters.

The Court holds that plaintiff has failed to demonstrate the necessary irreparable harm.

### Likelihood of Success on the Merits

■ At the evidentiary hearing plaintiff's counsel stated that plaintiff did not contest the reasonableness or validity of the regulations. Counsel claims that there was substantial compliance with the regulations and that plaintiff, the broker, did everything that it could have done to assure that NYK presented the T & E entries for certification by the appropriate Customs officials at Newark. Plaintiff admitted that the merchandise was removed from the Boston terminal without Customs' authorization. These actions prevented Customs from examining and supervising the exportation of this prohibited merchandise.

Importers have an affirmative duty to present T & E entries at the port of export

---

5. On this record and with the short time available to decide this motion before the expiration of the TRO, the Court finds the Supreme Court's treatment of a similar question in *Secretary of the Navy v. Avrech, supra,* persuasive:

Without the benefit of further oral argument, we are unwilling to decide the difficult jurisdictional issue.... We believe that even the

most diligent and zealous advocate could find his ardor somewhat dampened in arguing a jurisdictional issue where the decision on the merits is thus foreordained. We accordingly leave to future case the resolution of the jurisdictional issue ...

418 U.S. at 677–678, 94 S.Ct. at 3040.

for certification of export under Customs' custody. *See* 19 C.F.R. §§ 18.3, .7, .20, .25, .26 (1984). This duty was not met. Under these circumstances there is no likelihood that the Court will require Customs officials to acknowledge that the merchandise has been exported.

### Public Interest and Balance of Hardships

■ The purpose of these regulations is to ensure that merchandise entered into the United States and found to be contaminated does not enter the marketplace. The public interest demands that there be scrupulous compliance with regulations requiring the exportation or destruction under Customs supervision of such merchandise. The failure to adhere to these regulations has prevented Customs from performing its duties to protect the public health and welfare.

The Court holds that the public interest is best served by denying the injunction.

In view of the Court's determination that each of the above factors favor denial of the motion, it finds little to weigh on plaintiffs' side in balancing the equities. The motion for a preliminary injunction is denied.