INTERNATIONAL MAVEN,
INC., Plaintiff,

v.

Patricia McCAULEY, District Director
of Customs, and United States of
America, Defendants.

Court No. 87–12–01163.

United States Court of
International Trade.

Jan. 20, 1988.

Peter S. Herrick, Miami, Fla., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, Mark S. Sochaczewsky, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

TSOUCALAS, Judge.

■ Plaintiff initiated this action to contest the seizure of its imported toiletry products bearing the English Leather trademark. Concurrent with filing the complaint, plaintiff moved for an order to show cause why a temporary restraining order and preliminary injunction should not issue prohibiting Customs from denying plaintiff's merchandise entry into the country. Defendant cross-moved to dismiss for lack of jurisdiction. Oral arguments were heard on December 14, 1987, at which time the Court denied plaintiff's application for injunctive relief, and reserved decision on defendants' motion to dismiss for lack of jurisdiction.[1] This opinion is issued in conformity with that order and further addresses defendants' motion.

## BACKGROUND

On August 17, 1987, when plaintiff attempted to enter the English Leather toiletries, Customs seized the merchandise for violation of 19 C.F.R. § 133.23a, 18 U.S.C. § 545, and 19 U.S.C. § 1595a(c),[2] alleging it

---

1. When relief is denied, it is permissible to reserve decision on the threshold issue of jurisdiction. *See Anderson v. United States*, 9 CIT 252, 254, 611 F.Supp. 975, 977–78 (1985).

2. 19 C.F.R. 133.23a requires the seizure of counterfeit goods, and if imported without the permission of the trademark owner, authorizes their forfeiture.

Under 18 U.S.C. § 545, fraudulently imported merchandise shall be forfeited.

was counterfeit, as indicated in the notice of seizure dated August 21, 1987. *See Plaintiff's Memorandum of Law in Support of Motion for Injunctive Relief,* Affidavit of Peter S. Herrick, Exhibit C.

On August 26, 1987, plaintiff responded to an ELECTION OF PROCEEDINGS FORM issued by Customs, requesting that Customs consider its petition for relief from seizure administratively, thereby opting against immediate commencement of administrative forfeiture proceedings. *See* Herrick Affidavit, Composite Exhibit B. On September 22, 1987, plaintiff petitioned for relief from seizure, which is apparently still pending with the Office of Regulations and Rulings. *See Defendants' Memorandum of Law in Support of Motion To Dismiss,* Affidavit of Richard O. Litsey. Subsequently, plaintiff continued to provide documents to Customs in an effort to establish the genuineness of the goods. On October 9, 1987, plaintiff filed a protest challenging the "seizure" of the merchandise, and the protest was denied on November 13, 1987. Plaintiff continued in its attempts to resolve the matter administratively until it filed this action.

Apparently, MEM, the owner of the American trademark for English Leather, conducted independent tests on samples of the seized merchandise which reveal: 1) the cologne bottles were not to specification; 2) according to gas chromatograph studies, the essential oil is not English Leather; 3) the deodorant stick was underweight, incorrect in color, filled by direct pour rather than cast method, and the essential oil was not the English Leather fragrance. *See Defendants' Memorandum,* Affidavit of Robert G. Burch. However, plaintiff claims that it purchased certain English Leather products from Industria de Tocador Peruana S.R.L., a Peruvian company, who was authorized by MEM to manufacture the imported goods. Plaintiff stresses

that documents establish the existence of this agreement.[3] It is alleged, that if a difference in product formula results, it may be due to MEM's failure to properly maintain quality control, or it could result from variations in the alcohol which is used to produce these particular goods.

*Injunctive Relief*

Plaintiff claimed it would be irreparably harmed if its goods were not released before the holiday season, as this would represent a financial loss, and if the toiletries remained in Customs' custody for an extended period of time, any loss in value could not be recovered against the government. The Court concluded that these potential financial losses were not sufficient to establish irreparable injury. In order to grant the TRO, plaintiff was required to demonstrate: 1) the threat of immediate irreparable harm; 2) the likelihood of success on the merits; 3) that the public interest is better served by issuing rather than by denying the injunction; and 4) that the balance of hardships to the parties favors the issuance of an injunction. *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir.1983); *S.J. Stile Assocs., Ltd. v. Snyder,* 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981).

■ Additionally, a preliminary injunction generally should issue only to protect the status quo, and should not be granted to award plaintiff the ultimate relief it seeks. *Associated Dry Goods Corp. v. United States,* 1 CIT 306, 311, 515 F.Supp. 775, 780 (1981). The status quo is not as plaintiff argues, allowing the entry to proceed, rather, it is the detention of the goods. In protecting the public interest, Customs has prevented the entry of allegedly counterfeit goods. "Turning possession of the goods over to plaintiff for resale would defeat that goal and might frustrate the ability of the defendant to pursue the

---

19 U.S.C. § 1595a(c) permits the seizure and forfeiture of any merchandise that is attempted to be introduced into this country contrary to law, other than in violation of 19 U.S.C. § 1592.

**3.** Specifically, plaintiff relies on: invoices indicating that bottles, caps, labels, boxes, and plastic containers were shipped by MEM to this

company; a letter of credit and an insurance declaration, reflecting the shipment of chemicals to Tocador; and telexes covering price, advertising, list of ingredients and components, and transportation instructions. *See* Herrick Affidavit, Composite Exhibit B.

available remedies should the latter prevail on the merits." *R.J.F. Fabrics, Inc. v. United States*, 10 CIT ——, ——, 651 F.Supp. 1431, 1436 (1986).

## DISCUSSION

█ Plaintiff initially asserted that jurisdiction was properly invoked under 28 U.S. C. § 1581(i), but at the hearing moved to amend its jurisdictional basis to include in the alternative, 28 U.S.C. § 1581(a). Under § 1581(a) this court has jurisdiction to hear actions contesting the denial of a protest. Plaintiff stresses that in accordance with *R.J.F., supra*, its goods were excluded and not seized, and since its protest against the exclusion of its merchandise was denied, then jurisdiction is properly invoked. In *R.J.F.*, the plaintiff protested the exclusion of the imported goods which were later seized, this Court held that it had jurisdiction over the action, contesting the denial of the protest, pursuant to § 1581(a). That opinion set forth a distinction between exclusion and seizure:

> The practical effect of ... [exclusion] is to deny entry into the customs territory of the United States. The importer may then dispose of the goods as he chooses. In the case of seizure, however, the government often takes control of the merchandise, and may ultimately institute forfeiture proceedings.

10 CIT at ——, 651 F.Supp. at 1433. The distinction is relevant in determining the proper forum to challenge the agency action, since pursuant to 28 U.S.C. § 1356 (1982):

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.

Section 1582 addresses actions commenced by the United States and is thus, not applicable. Further, *R.J.F.* does not stand for the proposition that a seizure may be protested, but merely enunciated this Court's interpretation that its jurisdiction over pro-

tested exclusions did not necessarily cease once the goods were subsequently seized. 10 CIT at ——, 651 F.Supp. at 1433.

The Court must conclude that plaintiff was in fact protesting the seizure, not the exclusion of the goods based on the following reasons: (1) the protest itself states that it challenges the seizure of the goods; (2) in August 1987, plaintiff received a notice of seizure; (3) as admitted by plaintiff, the government has control of the merchandise; and (4) after this "seizure", plaintiff was required to make a choice as to whether immediate forfeiture should begin or whether plaintiff wanted to petition for relief from seizure. There does not appear to have been any exclusion, but rather the goods were seized from the inception of their attempted entry. Thus, jurisdiction over this action does not properly lie under § 1581(a).

It should be noted that a petition pursuant to 19 U.S.C. § 1618 is "the usual avenue for importers recovering possession of seized property." *Siaca v. United States*, 754 F.2d 988, 990 (Fed.Cir.1985); *see* 19 C.F.R. § 162.31 and § 171.0, *et. seq.* In the majority of cases, this petition for remission or mitigation settles the dispute, eliminating the need for judicial intervention. *Siaca, supra*, citing *United States v. Eight Thousand Eight Hundred and Fifty ($8,850) Dollars in United States Currency*, 461 U.S. 555, 566–67, 103 S.Ct. 2005, 2013, 76 L.Ed.2d 143 (1983); *United States v. Forty–Seven Thousand Nine Hundred and Eighty ($47,980) Dollars in Canadian Currency*, 804 F.2d 1085, 1089 (9th Cir. 1986). If this process does not resolve the issue, then by the government bringing a judicial condemnation proceeding, the claimant is permitted to assert his claim or interest in the property. *Siaca*, 754 F.2d at 990–91. If plaintiff is challenging a delay in the commencement of forfeiture proceedings, it may have a cause of action in district court. *$8,850*, 461 U.S. at 566–67, 103 S.Ct. at 2013; *$47,980*, 804 F.2d at 1089.

█ As to whether jurisdiction may be

properly claimed under 28 U.S.C. § 1581(i),[4] it is settled that this is not the appropriate court to hear claims brought pursuant to § 545. *See* 28 U.S.C. § 1355 (1982); *United States v. Gold Mountain Coffee, Ltd.*, 8 CIT 247, 597 F.Supp. 510 (1984), *reh'g denied*, 8 CIT 336, 601 F.Supp. 212 (1984). Further, the Court again must distinguish its position in *R.J.F.*, from the factual situation presented herein. The detention of plaintiff's goods in *R.J.F.* occurred to prevent the attempted entry of merchandise, restricted by quota, under allegedly false documents. As was stated in that case, even if the exclusion was not protestable, the controversy nonetheless required a determination of country of origin of the merchandise excluded for possible quota requirements. Thus, jurisdiction would lie under § 1581(i)(3) and (4) as, in essence, that was an action arising out of the administration and enforcement of a quantitative restriction on imported goods. 10 CIT at ——, 651 F.Supp. at 1436–37.

In comparison, an action which contested a seizure and forfeiture was dismissed, as the challenge did "not fall within paragraphs (1)–(3) of subsection (i) nor is it part of the administration or enforcement of matters referred to in such paragraphs or in subsections (a)-(h) of 28 U.S.C. § 1581." *Andrew R. McCarthy d/b/a Long Beach Classic Imports v. John H. Heinrich*, 11 CIT ——, ——, 674 F.Supp. 863, 865 (1987).

The underlying dispute in this action would require a determination on the substantive law covering trademark and counterfeit goods. Under 28 U.S.C. §§ 1331 and 1338, the district courts have original jurisdiction over actions based on federal statutes relating to trademarks. *See e.g., Montres Rolex, S.A. v. Snyder*, 718 F.2d 524 (2d Cir.1983) (district court had jurisdiction pursuant to 28 U.S.C. § 1331, over

action by American trademark owner challenging Customs decision that imported goods were not counterfeit, but were merely infringing the trademark), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984); *United States v. Eighty–Nine (89) Bottles of Eau de Joy*, 797 F.2d 767 (9th Cir.1986) ("genuine goods" imported without trademark holder's consent subject to forfeiture action in district court).

In *Lois Jeans & Jackets, U.S.A., Inc. v. United States*, 5 CIT 238, 566 F.Supp. 1523 (1983), plaintiff was served redelivery notices for imports which allegedly infringed a trademark. This court had jurisdiction only over the action challenging the validity of the notices, based on Customs' noncompliance with its regulations. However, the infringement issue was not within the court's jurisdiction and would be addressed in the declaratory judgment action filed by the importer in district court. *See also Bally/Midway Mfg. Co. v. Regan*, 5 CIT 237, 565 F.Supp. 1045 (1983) and *Kidco, Inc. v. United States*, 4 CIT 103 (1982) [Available on WESTLAW, 1982 WL 2269] (actions by American copyright owners, seeking to prevent cancellation of redelivery notices to the importer of allegedly infringing goods, were not within this court's jurisdiction under § 1581(i)(3) or (4) and transferred to district court); *compare Schaper Mfg. Co. v. Regan*, 5 CIT 266, 566 F.Supp. 894 (1983) (thrust of action pertained to Customs' regulations for posting of bonds by copyright owner in conjunction with its demand to exclude imported piratical copies of its product).

This court may have jurisdiction over certain actions which relate to the exclusion of merchandise subject to trademark protection. *See Vivitar Corp. v. United States*, 761 F.2d 1552, 1560 (Fed.Cir.1985),

---

**4.** Section 1581 (1982 and Supp. III 1985) provides:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section ..., the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

\* \* \* \* \* \*

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)-(h) of this section.

*cert. denied,* 474 U.S. 1055, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986); *contra Olympus Corp. v. United States,* 792 F.2d 315 (2d Cir.1986), *petition for cert. filed,* 55 U.S. L.W. 3372 (U.S. Nov. 6, 1986) (No. 85–757); *Coalition to Preserve the Integrity of American Trademarks v. United States* (COPIAT), 790 F.2d 903 (D.C.Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 642, 93 L.Ed.2d 699 (1986).

Our appellate court in *Vivitar* held that the CIT had jurisdiction over an action, contesting Customs' refusal to exclude certain trademarked goods pursuant to its regulation, as a corollary to its protest jurisdiction under 28 U.S.C. § 1581(a), and alternatively, had jurisdiction under § 1581(i)(3) and/or (4), as an embargo or quantitative restriction. 761 F.2d at 1560.[5] *But see COPIAT,* 790 F.2d at 906–07 (embargo or quantitative restriction must relate to trade policy for CIT to have jurisdiction under this section); *Olympus,* 792 F.2d at 318–19, (these sections contemplate a numerical restriction).

Nevertheless, these cases have only involved a challenge to the validity of the regulations, and do not implicate the jurisdiction of this court over seizures or claims relating to counterfeit goods. *See, e.g., 89 Bottles of Eau de Joy,* 797 F.2d at 770 (*COPIAT, Olympus,* and *Vivitar* have generally involved Customs' interpretation of an exception to the statute prohibiting the import of infringing or counterfeit goods, rather than the scope of that statute). Moreover, were resolution of the action to depend upon a determination of the substantive trademark issue, jurisdiction would properly lie in the district court. *Vivitar,* 761 F.2d at 1560. Therefore, this action is not within this court's jurisdiction under 28 U.S.C. § 1581(i).

## CONCLUSION

This court does not have jurisdiction pursuant to 28 U.S.C. § 1581(a) over this cause of action as plaintiff's goods were seized and not excluded. The district court has

original jurisdiction over seizures. Further, the goods were seized as they were allegedly counterfeit. Thus, the substantive issues requiring determination do not fall within the administration and enforcement of the laws over which this court has jurisdiction under 28 U.S.C. § 1581(i). Therefore, defendants' motion to dismiss is granted. So ordered.

---

**5.** The CIT held that the statutory exclusion of the merchandise under § 1526 constituted a quantitative limit of "zero". *Vivitar v. United*

*States,* 7 CIT 170, 176, 585 F.Supp. 1419, 1426 (1984).