**Hector Rivera SIACA, d/b/a Guayaberas Don Hector, Appellant,**

v.

**The UNITED STATES, et al., Appellees.**

**Appeal No. 84–1208.**

United States Court of Appeals, Federal Circuit.

Feb. 14, 1985.

John M. Garcia, Hato Rey, P.R., submitted for appellant.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., Joseph I. Liebman, Attorney-in-Charge Intern. Trade Field Office and Michael P. Maxwell, New York City, submitted for appellees.

Before SMITH, Circuit Judge, NICHOLS, Senior Circuit Judge, and NIES, Circuit Judge.

NICHOLS, Senior Circuit Judge.

This case is an appeal stated to be from an opinion of the Court of International Trade (CIT), 7 CIT ——, slip op. 84–5 (January 26, 1984), *reh'g denied,* 585 F.Supp. 668 (Ct. Int'l Trade 1984), dismissing the complaint in this action for lack of subject matter jurisdiction. The complaint is on its face a petition for return of illegally seized merchandise. It had previously been filed with the United States District Court for the District of Puerto Rico and was by it transferred to the CIT on the ground that the CIT had exclusive subject matter jurisdiction under 28 U.S.C. § 1581(i)(2). The CIT held that the action, if to contest the assessment of duties, was not backed by a proper protest, and if to recover damages for an illegal search and seizure, is to recover for a tort, and as such is barred by

28 U.S.C. § 1346(b) and § 2680, which, taken together, show a clear stand by Congress not to consent to tort actions seeking damages based on alleged illegal searches or seizures by customs officers. On motion for rehearing, the court added the further reason that even if the goods were seized illegally, the proceeds as realized on auction were devoted to pay lawful duties, and under such circumstances a court of equity should not order their refund to the party owing the duties, which appellant was. We think it possible that in considering this aspect only, the court may have exercised subject matter jurisdiction and the dismissal could be considered to be on the merits. The court was responding to the argument that it had mistaken the relief sought, which neither sounded in tort nor attacked the assessment of the duties.

We agree with the court below and in general for the reasons given by it. Appellant in his brief now claims only the return of the seized merchandise, or its money proceeds, and presumably therefore has waived the tort damages originally claimed. It is arguable that merely claiming the return of seized merchandise is not a tort claim and we have therefore given independent consideration to that question. It does not, however, change the result, which is that we affirm.

### Facts

This case commenced with a visit by Customs Special Agent Benjamin Garcia Villalobos (Garcia) to appellant herein, Hector Rivera Siaca (Rivera) at the latter's business premises at 353 Andalucia Street, Puerto Nuevo, Puerto Rico, the result of prior information from a confidential source. Rivera had been importing ornamental shirts (guayaberas) from Merida, Yucatan, Mexico. He cooperated, according to Garcia, in furnishing business records, by which it was established that Rivera had made 41 consumption entries under false invoices or other deceptive practices to reduce the duties payable, resulting in a loss of revenue of $114,274.01. The majority of shirts had been sold, but

237 dozens were found on and seized from the premises on October 5, 1979, having a domestic value of $79,345. Contrary to appellant's brief, there is nothing in the record to substantiate that any of the seizures were of shirts that had not been fraudulently entered. Only shirts were seized, and Garcia's report reflects that the same pattern of fraud was followed throughout. Seizure of goods legally imported without fraud or falsity would have been highly improper and we cannot accept the allegation that a customs agent did such a thing, included in a brief but not pleaded or otherwise documented.

By paper dated October 3, 1979, Rivera abandoned all claim to the seized merchandise, waived any further proceedings, judicial or administrative, tendered the merchandise as partial payment for his obligations with the Customs Service, and authorized its immediate sale, according to established procedures of the Service.

Rivera pleads that the "searches and seizures" were done without a warrant or probable cause, that the government agent obtained the seized property by improper conduct, lies, coercion, etc., and threatened Rivera with criminal prosecution if he consulted counsel. The first statement of such a claim by Rivera in the record was made on a customs claim form and is dated September 23, 1981, almost two years after the seizure, and after several other things had happened. The truth of the charges has never been tested in court since counsel has been unable to find a tribunal that will accept jurisdiction. For purposes of the present appeal only, we assume the charges true as pleaded.

The record reflects that the shirts were auctioned on November 15, 1979, and $29,835 was recovered. This was placed in a suspense account pending action on a petition for remission (pursuant to 19 U.S.C. § 1618) filed by appellant apparently in early 1980.

Some time or times before April 14, 1980, a penalty was assessed against Rivera under 19 U.S.C. § 1592 in the amount of approximately $996,000. This is the usual

action in customs fraud cases. The Supreme Court in *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), describes the procedure in such customs seizure cases as it was and still is. In 90 percent of all seizures the claimant petitions for remission or mitigation under 19 U.S.C. § 1618, the petition being addressed to the Secretary or his delegate, not any court. In 75 percent of petition cases, at least partial relief is granted, which typically settles the dispute with no court action being required. In this case, the petition did not deny the fraud, but was based wholly on petitioner's insolvency. The penalty was remitted by decision in September 1980, to $40,000 provided petitioner also deposited $114,274.01 as "withheld duties." In the absence of compliance with the decision, the matter was to be referred to the United States Attorney. He did in fact sue Rivera, but the suit was voluntarily dismissed for reasons not given.

Section 1521 of Title 19 U.S.C. authorizes reliquidation of otherwise final liquidations, in the event of fraud. On April 25, 1980, the involved entries were reliquidated under this authority to assess the duty liability that would have accrued in the absence of fraud. If it is correct that Rivera filed no protest, this reliquidation is now final and binding so far as he is concerned, by 19 U.S.C. § 1514, and therefore establishes that the importations were fraudulent. The surety did in fact protest and on denial of the protest took an appeal to the CIT reported as *American Motorists Insurance Co. v. United States*, slip op. 83–8 (February 1, 1983). The law allows such a protest by a surety. Rivera says he did not join in the protest and so is not bound by the CIT decision. It would seem possible that in the circumstances a surety is protesting on behalf of others having an interest in the entry as well as himself, and all would be bound, but that issue is moot in this case because if Rivera was not a party to the protest he is bound by the reliquidation. If he was a party he is bound by the

CIT decision which sustains the reliquidation in all respects.

Rivera filed two suits in the United States District Court in Puerto Rico. One was to enforce his tort claim for wrongful acts by the customs agent in the amount of $4,000,000. The district judge dismissed this action on the ground of nonwaiver of sovereign immunity, and we do not understand it to be before us. The other is limited to petitioning for return of seized property, or its fruits, the proceeds realized at auction. That suit was transferred to the CIT, passed upon by the CIT, and is now before us under the present appeal.

### Discussion

This is, of course, not the first case in which importers alleged improprieties by customs agents in course of seizing property for false entries under 19 U.S.C. § 1592, and it is probably not going to be the last. Congress has made complete and elaborate provisions to deal with the situation, and we commence by considering what they are and why they did not work as intended in this case.

As the Supreme Court notes in *United States v. $8,850, supra*, the provisions for administrative relief and judicial review coexist and work in tandem. The petition to the Secretary under § 1618 can allege nonculpability, or a less serious level of culpability, than the seizing officer proposed. It can allege that the seized merchandise, if any (the procedure applies to money penalties also), was not properly seized. It is in point of fact the usual avenue for importers recovering possession of seized property. It does not appear that in this case the petition relied on any ground except indigency. The record does not include the petition, but the Customs Bureau decision summarizes it as relying on no other ground and appellant nowhere challenges the accuracy of this statement.

If the petition and remission procedure does not settle the case, and the property is valued, as here, over $10,000, then by 19 U.S.C. § 1610 the United States Attorney must be notified and the seizure placed

before the court by a proper proceeding for condemnation. In such a proceeding, of course, misconduct by the seizing officer would be a proper subject for judicial inquiry, especially if, as alleged here, it was of a nature to jeopardize the legality of the seizure itself, as for example, the lack of a proper warrant and of probable cause associated with absence of consent to the search. By § 1608 a claimant to property is permitted to file a claim noting his interest. By § 1604 the duty of the United States Attorney applies to cases, unlike here, when the liability is for a money penalty or forfeiture and a seizure of specific goods is not involved. The warrant procedure is found in § 1595.

These procedures were frustrated here and did not work as Congress intended because of the shift in appellant's position. Since on October 3, 1979, he waived all rights to a further proceeding, judicial and administrative, and tendered the seized property in part payment of his debt, appellees could properly take it that formal report to the United States Attorney, condemnation under § 1610, etc., were superfluous and the appellees were free to dispose of the property without further ado. Appellant has alleged that this October 3 document was itself invalid because tainted by the illegality of the customs agent's doings. It appears, however, that he passed up opportunity after opportunity to advise the Secretary of the misconduct of his representative, including the § 1618 petition and the suit by the United States Attorney to recover the penalty. So far as the record shows, the first that was heard of these matters was the tort claim of September 23, 1981, and appellant did not in his suit on that claim advise that he had made his wrongs known at any earlier date.

Appellant also does not show that he does not owe appellees a much larger sum in duties and penalties than the fruits of the seized merchandise as realized in the auction sale.

Appellant's scholarly brief relies on what he calls an "anomalous" jurisdiction in United States District Courts to order return of illegally or unconstitutionally seized property, invoking "general equitable principles." Some of the cases are discussed in Judge Restani's opinion on rehearing to which reference is made, and support that such jurisdiction has been exercised, but none are customs cases. Appellant invokes the general notion of *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), but as we understand his position, he denies that he is suing in tort or expects to be compensated out of the Federal Treasury. Rather, he is invoking the help of equity to trace and recover a specific fund of money which may never have been merged into the General Fund of the Treasury.

There exists a general consent to suits founded on equity and which do not call on the Treasury to assuage the plaintiff with money. 5 U.S.C. § 702. Its effect is to eliminate sovereign immunity as a defense, but, of course, the claim must be otherwise supportable. Whether a claim, so understood, is within the subject matter jurisdiction of the district court is a matter we deem unnecessary to pass on here and believe should be decided in the first instance by the courts involved. We do not read Judge Restani as specifically deciding the point and its resolution can wait. She holds rather that appellant's claim is fatally defective even by his own theory, because it is wanting in equity.

*Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), teaches a technique for determining when causes of action to enforce constitutional rights may be taken in the federal courts under "anomalous" jurisdiction even though the consent of Congress is not expressly spelled out. By this opinion, as we read it, the more Congress has dealt in detail and over years with a class of cases, the less free are the courts to imply such causes of action without direct statutory support. In *Bush v. Lucas* the issue was a suit by a federal employee against a supervisor in the Civil Service. Congress has dealt elaborately and in detail with the rights of civil ser-

vants since 1883 and if any specific kind of relief is not granted, the inference is it has decided against it.

The same reasoning applies here. Congress has dealt even longer with Customs since the first thing Congress did when it convened in 1789 was to pass a Tariff Act. Existing law contains elaborate and carefully articulated provisions dealing with the rights of persons whose property has been seized, possibly illegally. It cannot be said that these provisions were inadequate for the plaintiff's case. Assuming as we must and do, for purposes of our decision, that he was intimidated or bamboozled by the customs agent, the law would have been adequate and he could have had an administrative or judicial review or both of the seizure proceedings if he had not slept upon his rights long after he should have seen the light. He could have timely repudiated his October 3, 1979, waiver and thereby forced the government to institute forfeiture proceedings in court. *United States v. $8,850, supra.* Under these circumstances, we cannot say that a gap exists in the law which the courts are needed to fill.

As an equity plaintiff, appellant also suffers, as appellees argue, because he does not come into court with clean hands. He has acquiesced in and not protested a determination under 19 U.S.C. § 1521 that he participated in a fraud, accepting arguendo his own assertion that he was not a party to the surety's CIT appeal.

Appellant's arguments that he does not owe the penalty assessed as well as the reliquidated duties are quite unpersuasive. The CIT was properly satisfied that the proceeds realized by auction of the seized property have been applied towards payment owed appellee by appellant.

#### Conclusion

In view of the foregoing, the decision of the CIT appealed from is affirmed.

AFFIRMED.