**R.J.F. FABRICS, INC., Plaintiff,**

v.

**The UNITED STATES, the United States Customs Service, Regional Commissioner of Customs at New York, and the Area Director of Customs at Newark, Defendants.**

Court No. 86–11–01376.

United States Court of International Trade.

Dec. 1, 1986.

Soller, Singer & Horn (Melvin E. Lazar, Gerald B. Horn, Margaret H. Sachter and Carl R. Soller), New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice (Florence M. Peterson), New York City, for defendants.

## OPINION

TSOUCALAS, Judge:

Plaintiff, R.J.F. Fabrics, Inc., commenced an action in this Court on November 4, 1986 against the above-captioned defendants (hereinafter referred to as "defendant" or "United States"). At that time, plaintiff moved for a temporary restraining order and a preliminary injunction releasing its textiles which had been first excluded, and later seized, by Customs. The Court scheduled a hearing on plaintiff's motion for injunctive relief on November 6, 1986. Despite telephone conferences with the Court on Nov. 4 and Nov. 5, defendant initially advanced its jurisdictional objections in a brief submitted the morning of that hearing. The parties presented the question of jurisdiction as turning largely on the distinction between "seizure" and "exclusion" of merchandise. According to defendant, this action involved a seizure and should be heard in district court, pursuant to 28 U.S.C. § 1356 (1982). Plaintiff devoted the bulk of its jurisdictional argument to demonstrating the proposition that "the vehicle through which the merchandise has been excluded has been a seizure." Tr. of Oral Argument, Nov. 6, 1986 at 7. In effect, seizure could be treated as equivalent to exclusion, and could be validly protested. The parties indicated that they welcomed prompt decision on the motion and at the hearing's close, they expressed no desire to submit post-hearing briefs. In a ruling from the bench, the undersigned dismissed plaintiff's action due to a lack of

subject matter jurisdiction over a seizure of the goods by Customs. The Court also held that even if plaintiff could establish that jurisdiction properly rests in this Court, a preliminary injunction would be denied since such relief was not warranted under the relevant criteria and would amount to granting the final relief requested by plaintiff: the return of its merchandise. Subsequently, plaintiff moved for a rehearing claiming that it had not sufficient time at the original hearing to adequately prepare an argument in support of its position. In an effort to ensure comprehensive treatment of the jurisdictional issues raised by the parties, and to rectify any significant flaws made in the conduct of the original proceeding, *W.J. Byrnes & Co. v. United States*, 68 Cust.Ct. 358, C.R.D. 72–5 (1972), the Court, in exercise of its discretion, *Commonwealth Oil Refining Co. v. United States*, 60 CCPA 162, 166, C.A.D. 1105, 480 F.2d 1352, 1355 (1973), granted a rehearing on the question of jurisdiction which was held on November 17, 1986. After consideration of the arguments presented, and in light of authority uncovered by the Court's own research, the judgment of November 6, 1986 is vacated.

## Background

Entry of the shipment of plaintiff's textiles was denied by Customs on July 2, and July 11, 1986 as part of an ongoing investigation into the transshipment[1] of goods. The goods were suspected of originating from Korea, and not from Japan as indicated on the accompanying entry papers. Customs seized the textiles on August 15, 1986. On August 21, 1986, Customs sent plaintiff a document entitled "Notice of Seizure Under 19 USC 1592" explaining that seizure had been necessary to prevent the introduction of restricted merchandise, under allegedly fraudulent documents, into the commerce of the United States in an attempt to by-pass quota/visa requirements. *Plaintiff's Verified Complaint,*

Exhibit F. An attachment to the document also made mention of an alleged violation of 18 U.S.C. § 545. *Id.,* Attachment "A." On September 10, plaintiff protested "the exclusion of the merchandise ... by the seizure of said merchandise by the U.S. Customs Service." *Plaintiff's Verified Complaint,* Exhibit G. It claimed the relevant documentation demonstrated that Japan was the country of origin of the textiles. *Id.* The protest was denied on October 3, 1986. As stated earlier, an action was commenced in this Court on November 4, 1986, by the filing of a summons and verified complaint.

Plaintiff sought a judgment sustaining its protests and declaring Japan as the country of origin of its merchandise. Plaintiff also sought return of its merchandise pending final decision, alleging that failure to recover its goods for the purpose of sale into the commerce of the United States would result in its demise as a going concern by December, 1986. Defendant asserted that this Court did not have jurisdiction over the action and that in any event plaintiff had failed, under the appropriate criteria, to make a sufficient showing to warrant the issuance of an injunction. Defendant also expressed concern that the exercise of jurisdiction by this Court might interfere with a continuing criminal investigation conducted by the U.S. Attorney's Office. To date, no criminal proceedings, nor any forfeiture proceedings, have commenced.

## Jurisdiction

Customs seized the goods pursuant to 19 U.S.C. § 1592 (1982) and 18 U.S.C. § 545 (1982). It is settled that jurisdiction over claims brought pursuant to § 545 usually does not lie in this Court. 28 U.S.C. § 1355 (1982); *United States v. Gold Mountain Coffee, Ltd.,* 8 CIT 247, 249, 597 F.Supp. 510, 513, *reh'g denied,* 8 CIT 336, 601 F.Supp. 212 (1984) (declining to assert ancillary jurisdiction over § 545 claim where plaintiff instituted a penalty action under

---

**1.** It has been estimated that 86 million sq. yards of fabric, made largely in Southeast Asia, has been shipped through Japan to the United States in 1985. *See* The Journal Of Commerce, Nov. 6, 1986, § A, at 1, col. 5.

§ 1592). Defendant urges that, pursuant to 28 U.S.C. § 1356 (1982), jurisdiction over the seizure in this action is fixed in the district courts. Section 1356 provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.[2]

Against this background, plaintiff attempts to prove that this Court has properly acquired subject matter jurisdiction. *See United States v. Biehl & Co.*, 3 CIT 158, 160, 539 F.Supp. 1218, 1220 (1982). Plaintiff contends that jurisdiction exists pursuant to 28 U.S.C. § 1581(a) (1982) because its protest against the exclusion of the merchandise was denied. *See* 19 U.S.C. § 1514(a)(4) (1982 & Supp. II 1984). Alternatively, plaintiff premises jurisdiction on 28 U.S.C. § 1581(i)(3) or (i)(4) (1982). It argues that the underlying subject matter of this dispute concerns the quantitative restriction that its goods may be subject to if, in fact, their country of origin is Korea.

*Section 1581(a)*

■ Defendant focuses on the distinction between seizure and exclusion. It argues that when § 1514(a)(4) refers to "exclusion" as a protestable decision, it actually means "exclusion and not seizure." In effect, defendant views 19 U.S.C. § 1514(a)(4) and 28 U.S.C. § 1356 as operating together to allow judicial review of an exclusion in the CIT but to require that private parties commence suit in district court once a seizure is made by Customs. Plaintiff responds that the exclusion was effected through seizure and that seizure "simply restrains the merchandise until Customs concludes its inquiry into its country of origin." *Plaintiff's Memorandum of Law in Support of Motion for Rehearing* at 8. "The seizure in the present case is a provisional remedy only, a declaration of status, not an action against the merchandise *per se.*" *Id.* at 11.

Contrary to defendant's assertion, a finding of § 1581(a) jurisdiction does not require that "this Court determine[ ], as a matter of fact, that an exclusion is synonymous with a seizure." *Defendant's Opposition to Motion for Rehearing* at 5. Indeed, the Court agrees that the act of exclusion differs from that of seizure. The practical effect of the former act is to deny entry into the customs territory of the United States. The importer may then dispose of the goods as he chooses. In the case of seizure, however, the government often takes control of the merchandise, and may ultimately institute forfeiture proceedings. This distinction notwithstanding, it is clear that plaintiff protested the exclusion of its merchandise, and § 1514(a)(4), by its terms, allows this Court to review the denial of the protest. There is no doubt that plaintiff could have protested Customs' action after denial of entry on July 2 and July 11. The Court is unwilling, therefore, to adopt a rule that would divest the Court of International Trade of jurisdiction simply because plaintiff filed its protest after Customs chose, on August 15, to formally seize the subject goods.

Defendant's cited authority provides no basis for a contrary result. The decision in *Seaside Realty Corp. v. United States*, 9 CIT 178, 607 F.Supp. 1481 (1985) involved an attempt to interfere with district court forfeiture proceedings commenced under 18 U.S.C. § 545. In *Seaside*, the defendant had voluntarily dismissed its 19 U.S.C. § 1592 claim. In contrast, no forfeiture proceedings have begun in the instant case and there is no indication that the United States has abandoned its § 1592 claim. Moreover, it is significant that the authority relied upon by the *Seaside* Court, *Jones v. American Guild of Variety Artists*, 199 F.Supp. 840 (E.D.Pa.1961), stands only for the proposition that it is within the discretion of the trial court to dismiss a subsequent action where a prior filed action involving the same issues is pending. *Jones*, 199 F.Supp. at 841.

---

**2.** 28 U.S.C. § 1582 (1982 & Supp. II 1984) concerns actions commenced by the United States.

Similarly, the Court in *United States v. Eight Bales # S I.J.K. Raw Mink Skins,* 227 F.Supp. 425 (S.D.N.Y.1964) held that it had exclusive jurisdiction over the forfeiture of prohibited merchandise. *Id.* at 429. The Court noted the distinction between proceedings for forfeiture and those to review an exclusion and observed that a "District Court is without jurisdiction to review a collector's exclusion order." *Id.* As stated above, there are no prior proceedings to be interfered with in the case at bar.

That a number of cases wherein jurisdiction was exercised involved protests of exclusions and not seizures, *see, e.g., Wear Me Apparel Corp. v. United States,* 1 CIT 194, 511 F.Supp. 814, (1981), sheds no light on the issue of whether this Court's jurisdiction over an exclusion ceases upon the seizure of merchandise by Customs. Interestingly, reported decisions, whether decided under § 1581(a) or § 1581(i), fail, in any way, to buttress defendant's theory that seizure cases may not be heard in the CIT because of 28 U.S.C. § 1356. In *Rey Cafe Coffee Co. v. Pitman,* 5 CIT 112 (1983), Judge Boe denied an application for a temporary restraining order releasing coffee beans seized by Customs.[3] In *Siaca v. United States,* 7 CIT 10, *reh'g denied,* 7 CIT 207, 585 F.Supp. 668 (1984), *aff'd,* 754 F.2d 988 (Fed.Cir.1985), the action was dismissed for lack of subject matter jurisdiction. Plaintiff in *Siaca* sought damages for an illegal search and seizure and Congress had taken a "clear stand" against waiving sovereign immunity for tort actions seeking damages based on illegal

search and seizures by customs officers. *Siaca,* 754 F.2d at 989. The appellate court also agreed with the trial court that the importer could not contest the assessment of duties due to its failure to adequately exhaust administrative remedies. *Id.* at 988. Finally, the equitable concept of "anamolous jurisdiction" was inapplicable since, *inter alia,* plaintiff could not establish a lawful right to the subject property. *Id.* at 991–92. Plaintiff in the instant case has pursued the appropriate administrative procedure and properly seeks a declaratory judgment concerning country of origin of its merchandise excluded from entry by Customs.

*Section 1581(i)*

■ A party must exhaust meaningful opportunities for protest instead of resorting to § 1581(i) as a jurisdictional basis. *See United States v. Uniroyal, Inc.,* 69 CCPA 179, 183–84, 687 F.2d 467, 472 (Fed. Cir.1982). Plaintiff has followed that course in the instant case; nonetheless, the Court will discuss the reasons why jurisdiction would exist under § 1581(i) if there were no other adequate remedies under § 1581.

Plaintiff views this action as arising out of a law of the United States providing for quantitative restrictions not for health or safety reasons, or at least arising out of the administration or enforcement of a law providing for such quantitative restrictions. Therefore, exclusive jurisdiction rests in the CIT under § 1581(i)(3) or (i)(4).[4] Defendant again relies on what it asserts is

---

**3.** Jurisdiction is not discussed in that opinion but I believe that if either the Court or the parties had perceived a jurisdictional question, the issue would have at least been mentioned. Moreover, while it is sometimes true that jurisdictional issues are not decided prior to motions for injunctive relief, a court taking that approach will often make a statement to that effect. *See Hyundai Pipe Co. v. United States,* 10 CIT ——, ——, 650 F.Supp. 174, 176 (1986); *Anderson v. United States,* 9 CIT 252, ——, 611 F.Supp. 975, 977 (1985).

**4.** Section 1581(i) provides:
(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the

exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

. . . .

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

the plain language of 28 U.S.C. § 1356 placing jurisdiction over seizure matters, with limited exceptions, in the district court.

While it is true that the wrong addressed by 19 U.S.C. § 1592(a) is attempted entry under false documents—allegedly false with respect to country of origin—it is equally true that seizure pursuant to § 1592(c)(5) is only authorized where there is a violation of § 1592(a) *plus* the presence of an additional statutorily specified element; in this case, the need to prevent restricted merchandise from entering the country. Thus, seizure would not have occurred unless Customs believed that possible violation of a quota existed.

In any event, defendant's approach of looking to general jurisdictional provisions, such as 28 U.S.C. § 1356, to demarcate the limits of this Court's jurisdiction has been explicitly rejected by the Court of Appeals for the Federal Circuit:

> The jurisdiction granted to the U.S. Customs Court, predecessor to the Court of International Trade, has long been recognized as an exception to the jurisdiction of the district courts under 28 U.S.C. § 1331, i.e., federal question jurisdiction. *See, e.g., Sneaker Circus, Inc. v. Carter*, 566 F.2d 396, 398–99 (2d Cir. 1977), and cases cited therein. Thus, it is faulty analysis to look first to the jurisdiction of the district courts to determine whether the CIT has jurisdiction. Given the broad jurisdictional grant to district courts, a district court would always have jurisdiction, rather than the CIT, using this approach. The result would negate the intent of Congress in granting *exclusive* jurisdiction over certain

matters to the CIT. The focus must be solely on whether the claim falls within the language and intent of the jurisdictional grant *to* the CIT. Since no new claims were created by the Customs Courts Act of 1980 (the 1980 Act), Pub.Law No. 96–417, 94 Stat. 1727 (1980), which created the CIT, the expanded jurisdiction given to that court, *a fortiori*, means that additional exceptions to the jurisdiction of district courts must result.

*Vivitar Corp. v. United States*, 761 F.2d 1552, 1559–60 (Fed.Cir.1985), *aff'd*, 7 CIT 170, 585 F.Supp. 1419 and 8 CIT 109, 593 F.Supp. 420 (1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986).[5]

The legislative history to the Customs Courts Act of 1980, P.L. 96–417, 94 Stat. 1727 (1980), indicates that Congress sought to create a "comprehensive system of judicial review of civil actions arising from import transactions." H.R.Rep. No. 1235, 96th Cong., 2d Sess. 20, *reprinted in* 1980 U.S.CODE CONG. & ADMIN. NEWS 3729, 3731. This action requires a determination as to country of origin of merchandise excluded for possible violations of quota requirements. This is precisely the type of matter that should be decided in the CIT since to do so furthers the Congressional intent that the Court's expertise be "exclusively utilized in the resolution of conflicts and disputes arising out of the tariff and international trade laws...." H.R.Rep. at 28, *reprinted in* 1980 U.S.CODE CONG. & ADMIN.NEWS at 3739.

There is no reason that plaintiff's action must be dismissed simply because civil forfeiture or criminal proceedings may at some unspecified point be brought in the

---

**5.** *See also Ingram Contractors, Inc. v. United States*, 592 F.2d 832, 833 (5th Cir.1979); *Fritz v. United States*, 535 F.2d 1192, 1194 (9th Cir. 1976); *J.C. Penney Co. v. United States Treasury Dep't*, 439 F.2d 63, 65–66 (2d Cir.), *cert. denied*, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971); *but cf. Olympus Corp. v. United States*, 792 F.2d 315, 318 (2d Cir.1986); *Coalition to Preserve the Integrity of American Trademarks v. United States*, 790 F.2d 903, 905–07 (D.C.Cir.1986) (CPIAT), *petition for cert. filed*, 55 U.S.L.W. 3343 (U.S. Oct. 16, 1986) (No. 86–624). Even adopt-

ing the reasoning of *Olympus* and *CPIAT*, this case should be heard in the CIT since it falls into a category of "cases enumerated in 28 U.S.C. § 1581(i) [that] all specifically deal with traditional Customs matters (and thus lie within the Court of International Trade's expertise)...." *CPIAT*, 790 F.2d at 907. "Section 1581(i)(3) only extends to quotas and embargoes arising out of trade policy, the sort of measures that have traditionally limited the importation of shoes, textiles, automobiles, and the like." *Id.*

district court. *See United States v. Tabor,* 9 CIT 233, 608 F.Supp. 658 (1985); *United States v. Gold Mountain Coffee, Ltd.,* 8 CIT 247, 597 F.Supp. 510, *reh'g denied,* 8 CIT 336, 601 F.Supp. 212 (1984) (§ 1592 penalty actions allowed to proceed in CIT without exercise of pendent or ancillary jurisdiction over § 545 claims). *See also Azurin v. United States,* 10 CIT ——, ——, 632 F.Supp. 30, 31 (1986) (jurisdiction exists over mandamus action to compel release of property held by Customs despite filing of similar action in district court). Defendant may not frustrate this Court's exercise of jurisdiction by invoking the specter of future proceedings in other courts.

*Preliminary Injunction*

■ The criteria for granting a preliminary injunction are: (1) a threat of immediate and irreparable harm; (2) likelihood of success on the merits; (3) that the public interest would be better served by issuing rather than by denying the injunction; and (4) the balance of hardships on the parties favors issuing the injunction. *See S.J. Stile Associates Ltd. v. Snyder,* 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (Fed. Cir.1981) It is often written that the plaintiffs bear a heavy burden of persuasion in demonstrating the need for this type of extraordinary relief. *See, e.g., Zenith Radio Corp. v. United States,* 1 Fed.Cir. 74, 77, 710 F.2d 806, 809 (Fed.Cir.1983). Further, it is well settled that the purpose of injunctive relief is to maintain the status quo, not to grant the final relief sought if the movant should ultimately prevail on the merits. *See Associated Dry Goods Corp. v. United States,* 1 CIT 306, 311, 515 F.Supp. 775, 780 (1981); *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 844 (D.C.Cir.1977). For this reason alone, plaintiff's motion for a preliminary injunction must be denied.

It should also be noted that there are several factors which cast doubt on plaintiff's assertion of irreparable injury flowing from the seizure. Plaintiff waited ~~om the time of notice of the seizure,

August 21, 1986, until November 4, 1986 to commence an action and to seek injunctive relief. Additionally, representations were made to the Court that a principal of the plaintiff, Mr. Isaac Cavaliero, might lose his "home" if R.J.F Fabrics were not able to raise funds through the sale of the seized goods to pay creditors. *See Plaintiff's Motion for Preliminary Injunction,* Affidavit of Gerald B. Horn, at 3, ¶ 14. As counsel for the defendant mentioned, simple examination of the mortgage agreement reveals that Mr. Cavaliero is listed as residing at 300 E. 34th St., New York, N.Y. while the mortgaged property is located in the state of New Jersey. *See Plaintiff's Verified Complaint,* Exhibit E.

In addition, while the merits of its claim are not under consideration at this time, plaintiff has not made, for the purposes of a motion for injunctive relief, a convincing showing of likelihood of success on the merits; it has merely referred to the entry documentation showing Japan as the country of origin. In contrast, evidence in possession of defendant has been revealed, *in camera,* which tends to support defendant's claim as to country of origin. The Court is also mindful that a search warrant has been issued in connection with defendant's investigation. If a criminal action is ultimately brought, the textiles will be needed as evidence. Lastly, the obvious point of preventing entry of restricted merchandise is to keep it out of United States commerce. Turning possession of the goods over to plaintiff for resale would defeat that goal and might frustrate the ability of the defendant to pursue the available remedies should the latter prevail on the merits. For these reasons, it would be inappropriate to grant the extraordinary remedy of a preliminary injunction returning custody of the goods to plaintiff.

**Conclusion**

Plaintiff has properly invoked the jurisdiction of this Court by contesting the denial of a protest of the exclusion from entry of its merchandise pursuant to 28 U.S.C. § 1581(a). Even if the exclusion were not considered protestable, jurisdiction exists

under § 1581(i) since plaintiff's cause of action arises out of the administration and enforcement of a quantitative restriction on imported goods. Therefore, the Court vacates its judgment order of November 6, 1986 in Court No. 86–11–01376 and hereby enters an order, exercising jurisdiction over plaintiff's claim, in conformity with this opinion.

Furthermore, plaintiff has not made the requisite showing for a preliminary injunction and in any event, such relief would amount to granting plaintiff the same remedy it would achieve upon success on the merits. For these reasons, the motion for injunctive relief is denied.