CDCOM (U.S.A.) INTERNATIONAL, INC. Plaintiff,

v.

UNITED STATES, Defendant.

Slip Op. 97–48.
Court No. 96–11–02533.

United States Court of International Trade.

April 21, 1997.

Peter S. Herrick, Miami, FL, for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Bruce N. Stratvert, Trial Attorney, New York City), for Defendant.

## OPINION

WALLACH, Judge.

## I

## INTRODUCTION

Plaintiff CDCOM (U.S.A.) International, Inc. ("CDCOM") filed a Motion To Show Cause ("Motion to Show Cause") why merchandise it imported should not be released by the United States Customs Service ("Customs"). Defendant responded with a Motion

To Dismiss ("Motion To Dismiss"), claiming this Court lacked subject matter jurisdiction.

At a telephonic hearing of this matter on November 26, 1996, the Court denied Plaintiff's Motion to Show Cause for lack of cognizable evidentiary support. Because the United States provided some evidence admissible under USCIT Rule 56 standards, the Court held in abeyance its Motion to Dismiss to permit the Defendant to provide a proper foundation for the documentary evidence it had submitted. Thereafter, Defendant filed a Supplemental Submittal of evidentiary material in support of its Motion To Dismiss.

Before the Court ruled on the Motion To Dismiss, Plaintiff filed a Motion to Set Aside the Order of the Court Denying Plaintiff's Motion to Show Cause ("Motion To Set Aside"), submitting additional evidence to the Court, and maintaining the Court should order the immediate release of its merchandise. Defendant filed an Opposition to Plaintiff's Motion to Set Aside ("Opposition To Motion To Set Aside").

Prior to determination of either pending motion, Plaintiff filed a Motion for Rehearing ("Motion For Rehearing"), requesting the Court to set a rehearing on its Motion To Set Aside [1]. Defendant has filed an Opposition to Plaintiff's Motion for Rehearing ("Opposition to Rehearing"). The Court now denominates Defendant's Motion to Dismiss as a Motion For Summary Judgment, grants that Motion, and denies Plaintiff's pending Motions.

## II

## STATEMENT OF FACTS

CDCOM is a Florida corporation which imports, *inter alia*, video graphics accelerator (VGA) cards from Hong Kong for sale in the domestic market. Supplemental Declaration of Yuk Chuen Gene Ng ("Ng Supplemental Decl"), at ¶¶ 1 and 3.

On June 25, 1996, Customs examined a shipment of VGA cards imported by CDCOM ("First Shipment"), and discovered that the

packaging for the VGA cards contained the Microsoft Windows Stylized Flag Logo ("Flag Logo") and that the word "Microsoft" was spelled "Micorosoft." Declaration of Thomas M. Chance ("Chance Decl") at ¶ 2–3. The VGA cards themselves bore no Microsoft logo. Peter S. Herrick letter of September 20, 1996, Ex. 13 to Motion to Dismiss. On June 27, 1996, Customs detained the shipment for possible violations of the trademark law when the importer's broker, Pronto Cargo Brokers, failed to produce proof of authorization to use the Flag Logo. Chance Decl at ¶ 4.

In a July 2, 1996 letter, Microsoft said that although the manufacturer of the VGA cards, Silicon Integrated Systems ("Silicon") was licensed to use the "Designed for Windows 95" logo for certain of its products, it was not authorized to use the Flag Logo for the VGA cards seized in the First Shipment. Microsoft Letter of July 2, 1996, Ex. C to Supplemental Submittal. On July 12, 1996, Customs seized the First Shipment for trademark violations. Chance Decl at ¶ 7.

On July 26, 1996, Customs notified CDCOM that its VGA cards were being seized pursuant to 19 U.S.C. § 1526(e), because "the articles bear a counterfeit version of the trademark(s), 'Microsoft' which is registered with the United States Government." Customs Letter of July 26, 1996, Ex. D to Supplemental Submittal. Plaintiff exercised its right to petition Customs for relief under 19 U.S.C. § 1618 on August 7, 1996, followed by an addendum on August, 16, 1996. Ex. F and G to Supplemental Submittal. Plaintiff alleged in its August 7, 1996 petition that Customs had "failed to state that the seizure was being made under 19 U.S.C. § 1595a(c), and that this was a permissive seizure as required by the Customs Modernization Act (19 C.F.R. § 162.23(b))". Ex. F to Supplemental Submittal. Plaintiff also lodged a protest on August 2, 1996 against exclusion of the merchandise pursuant to 19 U.S.C. § 1514(a)(4) and requested immediate review. Exhibit A to Complaint.[2] Customs

---

1. It is unclear why Plaintiff chose to file two separate motions.

2. For purposes of deciding these Motions, the Court will take Plaintiff's Complaint, to which are attached various documents which purport to be letters from Plaintiff's counsel, as establishing

denied the protest in a letter to Plaintiff dated August 26, 1996. Exhibit B to Complaint.

On July 24, 1996, Customs examined and detained a second shipment of VGA cards, with the Flag Logo on its packaging ("Second Shipment"). Declaration of Philip Spataro ("Spataro Decl") at ¶ 2–3, Ex. 2 to Supplemental Submittal. On August 22, 1996, the Second Shipment was seized by Customs for possible trademark law violations after it was informed that the manufacturer, Well Data Computers, Ltd. ("Well Data"), was not licensed to use the Flag Logo. Spataro Decl at ¶¶ 5 and 6. In its letter of August 16, 1996, Microsoft said Well Data was not among licensed to use the "Windows Compatible" or "Designed for Windows 95" logos on VGA cards or hardware in general, and that it did not license the Microsoft Windows logo for external use. Microsoft Letter of August 16, 1996, Ex. K to Supplemental Submittal.

CDCOM was notified of the second seizure by Customs in a letter dated September 6, 1996. Customs Letter of September 6, 1996, Ex. L to Supplemental Submittal.

Plaintiff exercised its right to file a Petition for administrative relief with respect to the Second Shipment on September 20, 1996 and requested Customs to review the Petition immediately. Exhibit M to Supplemental Submittal. Pursuant to 19 U.S.C. § 1499(c)(5)(B), Customs took no action on the Petition within thirty days. On November 13, 1996, Plaintiff filed this suit.

---

a foundation for those letters, since the Complaint is signed by Plaintiff's counsel, and since they form the basis for establishing facts apparently uncontested by either party.

**3.** Plaintiff had originally contended in its Opposition to Motion to Dismiss that Customs' determination that the VGA cards are counterfeit should be set aside under the authority of Section 706(2)(A) of Title 5 of the United States Code which provides that a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Opposition at 7. In asserting Section 706(2)(A), Plaintiff alleges that Customs violated 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905 by releasing trade and commercial information to Microsoft. At the telephonic confer-

## III

## DISCUSSION

### A

### The Court Has No Jurisdiction Over This Case

Plaintiff asserts jurisdiction under alternative statutory provisions, relying on either 28 U.S.C. § 1581(a) or § 1581(i)(3).[3]

28 U.S.C. § 1581(a) grants this Court "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." [4] Section 1581(i)(3), provides exclusive jurisdiction over civil actions filed against the United States arising out of any law providing for "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." Section 1581(i)(4) grants jurisdiction in connection with the "administration and enforcement" of such laws.

For the reasons following, the Court concludes that it does not have jurisdiction over this action.

### 1

### Since Customs' Actions Constituted A "Seizure," There Is No Section 1581(a) Jurisdiction

The court in *Milin Industries, Inc. v. United States,* 12 CIT 658, 691 F.Supp. 1454 (1988), explained how the distinction between exclusion and seizure affects jurisdiction:

---

ence held on November 26, 1996, both parties conceded that allegations of possible criminal conduct by Customs are not appropriate matters for resolution before this Court.

**4.** Section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515, concerns the right of a party to bring a civil action in connection with the denial of a protest by Customs under Section 1514, Title 19. In relevant part, 19 U.S.C. § 1514 provides that "the exclusion of merchandise from entry or delivery ... under any provision of the customs laws ... shall be final and conclusive upon all persons ... unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade...." 19 U.S.C. § 1514(a).

If Customs' action was an "exclusion," . . . jurisdiction would lie with this Court under 28 U.S.C. § 1581(a) (1982) because Customs denied an importer's protest against the exclusion of merchandise. . . . If Customs' action was a "seizure," . . . jurisdiction would lie with the United States District Court . . . under 28 U.S.C. § 1356 (1982).

12 CIT at 659, 691 F.Supp. at 1454. *See also Int'l Maven, Inc. v. McCauley*, 12 CIT 55, 57, 678 F.Supp. 300, 302 (1988).

■ The jurisdiction of the Court, therefore, depends upon the nature of the action taken by Customs. As explained in *R.J.F. Fabrics, Inc. v. United States*, 10 CIT 735, 651 F.Supp. 1431 (1986),

[T]he act of exclusion differs from that of seizure. The practical effect of the former act is to deny entry into the customs territory of the United States. The importer may then dispose of the goods as he chooses. In the case of seizure, however, the government often takes control of the merchandise, and may ultimately institute forfeiture proceedings.

10 CIT at 738, 651 F.Supp. at 1433.

Based on *R.J.F.*, Plaintiff's present counsel argued in *International Maven* that goods were excluded and not seized.[5] 12 CIT at 57, 678 F.Supp. at 302. There the court concluded that the case involved a seizure and not a protest, because: 1) the plaintiff's protest indicated that it was challenging the "sei-

zure" of the merchandise; 2) the plaintiff received a notice of seizure from Customs; 3) the government had control over the merchandise; and 4) upon notice, the plaintiff was required to choose between immediate forfeiture proceedings or a petition for relief from seizure. 12 CIT at 58, 678 F.Supp. at 302.

The facts of this case [6] are in all pertinent matters identical to those in *International Maven*. Customs made an admissibility determination within the thirty-day statutory period required under 19 U.S.C. § 1499(c)(5)(A), declaring both shipments of the subject merchandise "seized" and issuing the appropriate seizure notices to Plaintiff.[7]

Indeed, the seizure notices received by Plaintiff indicate the proper procedures for forfeiture and protest were made available to Plaintiff. *See* Letters from Customs to CDCOM providing notices of seizure, Ex. D and Ex. L to Supplemental Submission. Consistent with the *R.J.F. Fabrics* standard and the facts of *International Maven*, nowhere in the record is there any indication the government has surrendered control of that seized merchandise.

Finally, Plaintiff's correspondence with Customs expressly refers to "seized" and not "excluded" merchandise. *See* Ex. F and Ex. M to Supplemental Submittal. The familiarity of Plaintiff's counsel with *International Maven* indicates that choice of language could not have been inadvertent.[8]

---

**5.** Plaintiff's counsel is thus well aware that we are required, paraphrasing a higher law, to render unto the district court that which is seizures.

**6.** Because the parties have chosen to submit evidentiary materials, competent portions of which have not been excluded, the Court is, pursuant to CIT Rule 12(b), treating this matter as a Motion For Summary Judgment under the standards enunciated in CIT Rule 56. As is set out below, there is no genuine issue of material fact and the Defendant is entitled to a Summary Judgment as a matter of law.

**7.** Under 19 U.S.C. § 1499(c)(5)(A), since both seizures occurred within thirty days of the presentation for examination, the merchandise was never deemed excluded. *See Tempco Marketing v. United States*, —— CIT ——, ——, 957 F.Supp. 1276, 1279 (1997). Congress has also expressly provided that merchandise may be detained and

then seized without having gone through a period of exclusion. *See* 19 U.S.C. § 1499(c)(4).

**8.** Recently, the four factor test was applied in a similar series of actions. *See Tempco Marketing*, —— CIT ——, 957 F.Supp. 1276 (1997); *Genii Trading Co. v. United States*, Slip Op. 97–22, 1997 WL 68249 (Feb. 10, 1997) (both cases involved the detention, exclusion, and subsequent seizure of imported rice noodles allegedly bearing counterfeit labels). Although Plaintiff points out that the mere fact that a case involves a trademark does not mean that this Court has no jurisdiction to review Custom's actions, when the trademark issue is substantive rather than incidental, this Court can defer to the expertise of the district courts. *See M.W. Kasch Co. v. United States*, 10 CIT 460, 463, 640 F.Supp. 1335, 1338 (1986); *See also Lois Jeans & Jackets, U.S.A. v. United States*, 5 CIT 238, 566 F.Supp. 1523 (1983) (plaintiff's challenge to validity of notices for

Since Plaintiff's protest is deemed a protest of a seizure, it is not a "valid" protest for purposes of § 1514(a), and, therefore, the matter is not appealable to this Court.

**2**

### Section 1581(i) Does Not Provide Residual Jurisdiction In This Case

■ Plaintiff also asserts jurisdiction over the case pursuant to 19 U.S.C. § 1581(i)(3) and (4).[9]

Section 1581(i) jurisdiction is residual, meaning it "may only be invoked when other available avenues of jurisdiction are manifestly inadequate or it is necessary to avoid extraordinary and unjustified delays caused by requiring the exhaustion of administrative remedies", *Milin Industries,* 12 CIT at 661, 691 F.Supp. at 1456. "[A] party must exhaust meaningful opportunities for protest instead of resorting to § 1581(i) as a jurisdictional basis." *R.J.F. Fabrics,* 10 CIT at 740, 651 F.Supp. at 1434.

Plaintiff seeks to circumvent district court jurisdiction by asserting that Customs was "applying its 'international trade laws' when it decided to seize the merchandise." The validity of Customs' actions pursuant to 19 U.S.C. § 1526(e), however, hinges not on Customs' interpretation of its authority under 19 U.S.C. § 1526(e), but on whether it correctly determined that the merchandise bore a counterfeit trademark under relevant trademark laws. For this court to assert jurisdiction over this case would require an in-depth inquiry into trademark law. *See*

*International Maven,* 12 CIT 55, 678 F.Supp. 300. Trademark law is purely domestic, not "international trade law."

■ Plaintiff's other argument for jurisdiction under § 1581(i)(3) appears to be that detention related to a quantitative restriction on imported goods equals an embargo. *See R.J.F. Fabrics,* 10 CIT at 743, 651 F.Supp. at 1437. In contrast to *R.J.F. Fabrics,* this action challenges a seizure based upon trademark law. Although Customs' authority to seize counterfeit goods under 19 U.S.C. § 1526(e)[10] might be construed as a law pertaining to an "embargo" against counterfeit goods under 28 U.S.C. § 1581(i)(3), in the statute, the word "embargoes" is followed by "or other quantitative restrictions." As the Supreme Court noted in *K Mart Corp. v. Cartier,* 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988), "the ordinary meaning of 'embargo,' and the meaning that Congress apparently adopted in the statutory language 'embargoes or other quantitative restrictions,' is a governmentally imposed quantitative restriction—of zero—on the importation of merchandise." 485 U.S. at 185, 108 S.Ct. at 957.

In this case, the import prohibition against goods that infringe upon trademark laws is unrelated to the administration or enforcement of a quantitative or quota restriction. *See McCarthy d/b/a Long Beach Classic Imports v. Heinrich,* 11 CIT 820, 822, 674 F.Supp. 863, 865 (1987) (an action which contested a seizure and forfeiture was dismissed, as the challenge did not fall within para-

imports allegedly infringing on trademark was properly before the Court of International Trade; infringement issue, however, was not and should be addressed in district court). That issue need not be addressed, however, since the district court remedy is certainly not "manifestly inadequate."

**9.** 28 U.S.C. § 1581(i)(1)–(3) provides in relevant part:
(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)—(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—...

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
(4) administration and enforcement with respect to matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

**10.** Section 1526(e), Title 19, United States Code, provides that:
merchandise bearing a counterfeit mark (within the meaning of section 1127 of title 15) imported into the United States in violation of the provisions of section 1124 of title 15, shall be seized and, in the absence of the written consent of the trademark owner, forfeited for violations of the customs laws.

graphs (1)-(3) of subsection (i) of Section 1581). Accordingly, and in light of *K Mart*, jurisdiction pursuant to 28 U.S.C. § 1581(i) does not lie in this Court.

## B

**Plaintiff Is Not Entitled To A Rehearing**

In its Motion To Set Aside, Plaintiff apparently seeks a rehearing under USCIT Rule 60(b) of the Court's prior ruling that the declaration of Yuk Chuen Gene Ng submitted in support of Plaintiff's Motion To Show Cause was incompetent. In support of that request Plaintiff asserts:

> It was excusable neglect, as contemplated by Rule 60(b), that the declaration filed with the Court in support of its motion did not adequately show that the declarant was competent to testify on matters before the Court.

Motion To Set Aside at 1.

Nowhere, however, in briefs, declarations or elsewhere, does Plaintiff provide any factual basis for that assertion.

Although CDCOM does not specify which of the several provisions of Rule 60(b) it relies, Plaintiff appears to have hung its argument on the slender peg of Rule 60(b)(1). In order to qualify for Rule 60(b)(1) relief, the "movant must demonstrate that he has a meritorious defense *and* that arguably one of the four conditions for relief applies—mistake, inadvertence, surprise, or excusable neglect." *Avon Products, Inc. v. United States*, 13 CIT 670, 672 (1989)(quoting *Universal Film Exchanges Inc. v. Lust*, 479 F.2d 573, 576 (4th Cir.1973)).

■ The term "excusable neglect" is not defined in the USCIT rules and its meaning must therefore be determined from case law. The cases in which parties have petitioned and obtained relief under Rule 60(b) are narrowly circumscribed. This Court has denied relief pursuant to Rule 60(b)(1) where in determining whether sufficient inadvertence

or excusable neglect exists, plaintiff's explanation was "neither sufficiently specific nor persuasive to comply with the requirement of Rule 60(b)." *Washington Int'l Ins. Co. v. United States*, 16 CIT 480, 483, 793 F.Supp. 1091, 1093 (1992) (motion to set aside dismissal under USCIT Rule 86(b) for lack of prosecution is denied without prejudice because plaintiff failed to adequately explain why it failed to remove its action from the Joined Issue Calendar within the six month period prescribed by the Rule).[11] Neither carelessness nor ignorance on the part of the litigant or attorney provides grounds for relief under Rule 60(b)(1). *Avon Products*, 13 CIT at 672.

■ CDCOM asserts that its failure to present competent evidence in the declaration attached to its Motion To Show Cause was excusable neglect, and has since re-submitted a declaration which attempts to meet the evidentiary standards required by US-CIT Rule 56(f). Mot. to Set Aside at 1–2. In its Motion To Set Aside, however, CDCOM fails to provide not only the necessary foundation for evidence previously submitted in its Motion to Show Cause, but also fails to meet the evidentiary standards required for the Court to assess whether there exists excusable neglect sufficient to warrant relief.

Nowhere do CDCOM's pleadings and supplementary declarations attempt to explain why this Court should disturb its previous ruling. CDCOM's reliance on unsupported and unexplained assertions of excusable neglect does not rise to a level in which a rehearing should be granted. Neglect there may well have been; that does not in itself make that neglect excusable.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is granted as a final Summary Judgment, and Plaintiff's Motions to

---

11. In *Washington International*, the court held that under Rule 60(b), "the moving party must present facts sufficient to demonstrate that the delay in filing was the result of … excusable neglect." *Id.* Furthermore, in *United States v. Atkinson*, 3 Fed. Cir. (T) 15, 748 F.2d 659 (1984)

the Court of Appeals upheld the denial of relief under Rule 60(b) noting that there was no evidence in the record, other than "naked and unsupported assertions," to support a finding of excusable neglect. 3 Fed Cir (T) at 18, 748 F.2d at 660.

Reconsider and Motion for a Rehearing are denied.